COLE *v.* SIMPSON.

1. CARRIERS—BUS PASSENGERS—ALIGHTING AT NIGHT—PERSONAL INJURIES—QUESTION FOR JURY.

   In action for injuries alleged to have been caused by sudden starting of bus from which plaintiff was alighting at about midnight, evidence *held,* to present for consideration of jury question as to whether an accident had happened notwithstanding the fact that the conflicting testimony might cause considerable doubt.

2. SAME—PERSONAL INJURIES—DISTURBED MENSTRUATION—PROXIMATE CAUSE—EXPERT TESTIMONY.

   The condition of plaintiff, a woman who suffered great pain and discomfort during her frequent, irregular and very prolonged menses, characterized as her main disorder, was of such a nature as to call for expert medical testimony to determine its cause in action for injuries alleged to have been sustained while alighting from defendants' bus wherein defendant claimed condition was due to antecedent duodenitis and colitis then in an advanced stage.

3. Words and Phrases—Medicine.

Medicine is not such an exact science that the cause of disease can always be determined and in most instances there is a possibility that any untoward condition may cause a more serious one.

4. Carriers—Setting Down Passengers—Personal Injuries—Evidence—Experts.

Admission of testimony of doctor that plaintiff's frequent, irregular and very prolonged menses accompanied by great pain and discomfort was a condition which it was 80 per cent. possible could have resulted from falling from defendants' bus when alighting and being dragged for a distance on the street was not error although it was of little probative value.

5. New Trial—Newly-Discovered Evidence—Personal Injuries—Credibility—Damages.

Denial of new trial on ground that alleged newly-discovered evidence could have been discovered before the trial by the exercise of reasonable diligence *held,* an abuse of discretion in personal injury case where defendant's claim that verdict was against the great weight of the evidence was very impressive, the affidavit of defendants' attorney states the newly-discovered evidence reasonably could not have been discovered prior to when plaintiff herself had testified· and evidence discovered was of such a nature as not only to contradict plaintiff's testimony because of similarity of previous claims against others by plaintiff which she had denied making but would show the cause and extent of her injuries and damages.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted October 10, 1941. (Docket No. 33, Calendar No. 41,647.) Decided December 2, 1941.

Case by Rose Cole against Orrie Simpson and Peoples Transport Corporation, a Michigan corporation, for personal injuries sustained while alighting from a bus. Verdict and judgment for plaintiff. Defendants appeal. Reversed and new trial granted.

*Floyd H. Skinner,* for plaintiff.

*Clifford A. Mitts, Jr.,* for defendants.

Butzel, J. Rose Cole, plaintiff, claimed that toward midnight on September 9, 1939, she was a passenger on a bus of defendant Peoples Transport Corporation driven by defendant Simpson. The bus was routed over the streets of Muskegon and Muskegon Heights. Plaintiff alleges that when the bus reached a corner intersection in Muskegon Heights from where it begins its return trip to Muskegon, it came to a stop and while plaintiff was in the act of alighting, it suddenly started up without the driver's giving any notice or warning to plaintiff; that the force of the sudden, unexpected starting caused her to lose her foothold and fall out of the door towards the street, and that either her clothing or her person was caught in the door so that she could not extricate herself and she was dragged from the corner to the middle of the intersection of the streets. Although she testified that she was conscious, she was unable to tell what part of her body or dress was caught. Defendants deny absolutely that the accident happened. They introduced testimony to show that the bus stopped for quite a long time at the place where plaintiff alighted, that the driver not only changed the signs on the bus, but took time also to walk around to the rear of the bus. No one was present except plaintiff and the driver when the bus stopped.

Plaintiff lived with a family for whom she worked, and who resided about a mile from the scene of the alleged accident. Plaintiff was able to walk to her employers' home, where she showed unmistakable signs of some injuries brought about in some manner. The disputed question of whether any such accident happened was one for the jury to determine notwithstanding the fact that the conflicting testimony may cause considerable doubt.

The testimony in regard to the beginning and extent of her maladies and whether the more serious one was caused by the accident is far more vague than that of the accident itself. In view of defendants' claim that the verdict is against the great weight of the testimony, it becomes necessary to go more fully into the facts. Plaintiff claims that the left side of the ankle of her left leg, the left side of her face and the knuckles and fingers of both hands were dragged along the pavement. There was some outward evidence of minor physical injuries. There were no broken members. There is a discoloration on her face caused by the abrasion of the skin about the size of a 50-cent piece. Her pocketbook was torn. One lens of her eye glasses was broken and had some blood on it. The heel was broken off from her left shoe which was torn. There was some blood on her blouse; her left stocking was also torn. Her left leg, where it had been bruised, looked as though it had been dragged over some hard substance. One knuckle was bleeding. She was vomiting some blood when she arrived at the home of her employers. She testified that there were no bruises or marks on her back, hip or thigh. Her left stocking was also torn on the inside but not on the outside and at the time of the trial a bright spot was visible on the stocking. Plaintiff claimed it was blood. There was testimony to the effect that the bright color of the spot at the time of the trial, over a year after the accident, was not blood, but that of some coloring matter, that blood after a year becomes dark and does not retain a bright color. Plaintiff wore a suit of clothes on the night of the accident. There was no dirt on the suit and it was not damaged although the inside lining of her coat was torn but this more likely would be caused by wear and tear, as there was no damage to the outside. The underclothing was likewise not

damaged. A doctor, who was called in, attended plaintiff for some time. The only bruises he could find were the abrasions on the ankle, leg, knuckles and face. They healed very shortly thereafter. Because of her fainting and the nausea she was sent to the hospital where she remained a few days and then came home, but shortly thereafter returned a second time to the hospital for a short period. It was only after this second time, four or five weeks after the alleged accident, that she complained of a back injury. A sacroiliac belt was furnished her. She again returned to the hospital for a third time. Some 10 months after the accident, X-ray pictures disclosed that she was suffering from duodenitis and colitis, the latter in an ulcerated form. She claimed damages for loss of time, hospital bills, et cetera, but her main ground of complaint is that the accident caused frequent, irregular and very prolonged menses with accompanying great pain and discomfort. We shall refer to the latter affliction as the main disorder. Four physicians were called, two by plaintiff, two by defendants. All had examined plaintiff at some time. Defendants' first medical witness testified that the accident would not have caused plaintiff's main disorder; their second, an X-ray specialist, was not questioned on the point. Plaintiff's first medical witness, who had attended her before and after the accident, testified that her duodenitis and colitis were much more likely the cause of her main disorder than the accident. The only medical testimony which even tends to contradict the foregoing was given by plaintiff's second medical witness, who saw plaintiff for the first time long after the accident, and whose testimony we shall discuss later. It was shown that at the time of the trial plaintiff was recovering from the main disorder and while conditions were not yet normal, they would be within a year. The judge instructed

the jury in regard to the various injuries including the main disorder. He told them that they were not to award any sums for damages for future suffering for a further period than one year.

Plaintiff's first medical witness who attended her on September 9, 1939, the date of the alleged accident, and for a considerable period thereafter, had occasion to treat her about a month or two prior to September 9, 1939. He testified that when he first saw her on this prior date, he believed that she had been in an accident previous to that time and that she had been in a faint and suffered damaging results. We mention this in connection with the motion for new trial hereinafter referred to. It would thus appear, but not with certainty, that plaintiff had suffered an accident previous to September 9, 1939. The occasion for the doctor's first visit arose when plaintiff had fainted in the kitchen of her employers' home and the doctor was called in; neighbors were also called in to help lift plaintiff, a heavy woman, to the davenport as she was unconscious at the time. Plaintiff, who was the first witness, testified that she did not have any trouble within a reasonable time prior to the 9th of September that required medical attendance. Both the doctor and the employer testified to the prior occasion when the doctor was called. The jury awarded a verdict of $3,500.

Defendants claim many errors. We shall only examine the principal ones as the others, if of any merit, will not recur on a new trial.

Plaintiff testified that she was first afflicted with the main disorder after the accident. There was medical testimony that duodenitis and ulcerated colitis, because of the advanced stage disclosed by the X-rays, must have developed long prior to the alleged accident. There was medical testimony that the main disorder was caused by this diseased con-

dition. We find nothing in the record to the contrary although the second doctor who testified for plaintiff may have believed that the questions put to him included the main disorder, though his testimony does not indicate it. He stated that his findings were that plaintiff had a persistent vomiting and complained of pain in the stomach and back, nervous condition and urinal disturbance. He also found she vomited blood. His findings did not include the main disturbance. He was asked whether. he had any opinion based upon reasonable medical certainty whether or not the findings he had made "could have been caused by a fall or being dragged;" his answer was, "Why it was possible, yes." The court was asked to strike the answer on the ground that it was conjecture, whereupon the court stated: "Depends upon how great the possibility is." Thereupon the doctor stated that it was "very great," "80 per cent. possible." Later he testified that she complained of her main disorder. Counsel for defendants claim that the court was in error in permitting the doctor to testify as to a possibility and not to what was reasonably probable. The main disorder was of such a nature as to call for expert medical testimony to determine its cause. Defendants' attorney claims that the court should have stricken the testimony as to possibility; that it had no probative value at all, but gave the jury an opportunity to indulge in conjecture. We agree that this testimony has very little probative value; that medicine is not such an exact science that the cause of disease can always be determined and it may be said that in most instances there is a possibility that any untoward condition may cause a more serious one. However, there was no error in admitting the testimony. In *Hunter* v. *Village of Ithaca,* 141 Mich. 539, we held that it was not improper to ask a witness whether an injury "could

cause'' a condition rather than whether such an injury would be likely to cause such result. We held that the objection went to the weight of the question rather than to its admissibility. The weight of authority sustains this ruling. See cases collated in L. R. A. 1915A, 1070.

While we are much impressed with defendants' claim that the verdict is against the great weight of the evidence, we base our decision on the ground that defendants' motion for a new trial should have been granted, because of subsequent discovery of evidence which, if true, would affect the question of damages and the cause of her disorder to a very considerable extent. When recalled for cross-examination toward the end of the trial, she testified that she had previously lived in Tulsa, Oklahoma, for 20 years, and that she never went by the name of Rosa Cole, but that her name was Rose Cole; that she had never made a claim against the Tulsa City Lines for a bus injury on or about April 21, 1926. When she was asked, however, whether she collected any damages on a previous claim, her answers were ''I don't remember,'' ''No, I don't recall that.'' Upon being pressed, she finally said, ''No.'' Again, when she was asked about collecting for another injury, she stated, ''I don't recall that,'' but then again gave the answer, ''No,'' and then when asked if she might have collected, she stated, ''No, I don't know anything about it.'' She stated that she came to Muskegon in 1938. On redirect examination she again repeated that she had never been injured in an accident prior to the one for which this suit was brought.

The motion for a new trial was based upon an affidavit of defendants' attorney. It stated that he had secured the newly-discovered evidence which

reasonably could not have been discovered prior to that time or until after plaintiff began her testimony. This evidence was to the effect that plaintiff had been a resident of Tulsa, Oklahoma, and she had made a claim against the Tulsa City Lines because of a fall in a bus, and that as a result she suffered injuries to her left leg, both above and below the knee, and to the foot above the ankle joint, also she had wrenched her back and sustained internal injuries. The claim was very similar to the one in the instant case. The same party had also made a claim against the Security Federal Savings & Loan Association of Tulsa, Oklahoma. Attached to the motion was an affidavit of a doctor in Oklahoma to the effect that Rosa Cole was a colored lady about 25 years of age, married, had no children, was about 5 feet in height, weighed at the time about 200 pounds, and was of a very dark color. There was also an affidavit of another doctor showing that Rosa Cole had made a claim against the Security Federal Savings & Loan Association on the ground that she had stepped into a hole in a wooden porch and sustained an injury to her back. The affidavit also gave a similar description of her. The affidavit of one of the doctors described the party who made the claim as Rose Cole though the receipts attached to the affidavits were signed by Rosa Cole. There was also attached to the motion a copy of an affidavit made by Rosa Cole and showing that she had separated from her husband some four years prior to the date that she made the settlement. In the release of claim by Rosa Cole, it was stated that the injuries sustained were permanent and progressive. The motion further stated that one of the doctors in Tulsa had found that she had an enlargement of the uterus due to a fibroid tumor. There was, however, no affidavit of any doc-

tor to this effect. The affidavit of defendants' attorney stated that Rosa Cole and Rose Cole are the same person.

The judge in denying the motion for a new trial held that the newly-discovered evidence could have been discovered before the trial by the exercise of reasonable diligence, and that it would prove no more than that plaintiff presented a similar claim against the parties mentioned which would in no way affect plaintiff's credibility in the instant case, unless it was proved that such claim was false. We believe that the affidavit of defendants' attorney was sufficient to show that the evidence could not be discovered previous to the trial and that it was only during the trial that he learned that plaintiff came from Tulsa, Oklahoma, and was the wife of one Wellington Cole, from whom she had separated, and that immediately thereupon he caused an investigation to be made in Tulsa regarding her activities there. If the affidavits from Tulsa are true they would show the cause and extent of her injuries and damages. Because of this newly-discovered evidence, the court abused its discretion in not granting a new trial.

Judgment is reversed, with costs to defendants, and the cause is remanded for a new trial.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, STARR, and WIEST, JJ., concurred.