383 P.2d 177

George BREIDLER, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and R. O. Classon, dba Serrita Marble Products Company, Respondents.

No. 7784.

Supreme Court of Arizona.

In Division.

June 26, 1963.

Riley & Riley, Tucson, for petitioner.

C. E. Singer, Jr., Phoenix, for respondent Industrial Commission, Donald J. Morgan, Lorin G. Shelley, Ben P. Marshall, Robert D. Steckner and Raymond E. Peterson, Phoenix, of counsel.

BERNSTEIN, Chief Justice.

This is a petition for certiorari to review an award of the Industrial Commission. In its award petitioner's compensation was re-stricted to medical expenses resulting from the lodging of some foreign bodies in his eye and their removal. The commission re-fused compensation for "Bell's palsy" which petitioner contracted at the same time and it is of this refusal that petitioner complains. The commission recognized the accident arose out of and in the course of his em-ployment. See, e. g., Watson v. Sam Knight Mining Lease, 78 Ariz. 114, 120, 276 P.2d 536, 539:

> "If it is shown that the conditions of employment result in subjecting an em-ployee to exposure to heat or cold in excess of that of the general public in the same vicinity, and he is injured thereby, the injury is compensable."

On the day of the injury petitioner was shoveling rock into a marble crusher. The temperature was approximately 114 degrees and he had been working in the sun without a break for about four hours. He was per-spiring heavily. The switch box which controlled the marble crusher was protected from the sun by a canopy so that the fuses would not get too hot. The petitioner's testimony as to how the accident happened is not contradicted:

> "Q. It's your testimony, you reached up, or reached under to cut off the switches?
>
> "A. As I was standing underneath the canopy cutting off the switch boxes, we had a wind come in from the north

and hit me on the side of the face. * * *

"Q. Do you recall the wind conditions on this date? Was it windy or calm?

"A. It was a calm day but at 4:30, just as I was cutting off the switches this wind came in and hit me right square on the side of the face while I was perspiring.

"Q. A gust of wind hit you in the face?

"A. That's right.

"Q. As I understand as you were cutting the switches off you were hit by this blast of air?

"A. That's right.

"Q. Then you experienced the paralysis and then as a result of the paralysis and not being able to close your eye you got the dust in your eye?

"A. That's right.
 * * * * * *
"A. What happened was that I had, while I was perspiring real heavily a *cold draft* did hit me right on the right side of the face here, paralyzing and I couldn't close the right eye." (Emphasis added)

Petitioner also testified that he had always been in excellent health and had never had Bell's palsy prior to the accident.

The petitioner's paralytic condition was diagnosed as "Bell's palsy", a paralysis of the side of the face caused by a blockage of the seventh cranial nerve. The commission's medical advisor, Dr. Edwards, in a memorandum to the claims' department stated:

" * * * The right Bell's palsy [is] not considered attributable to any accident described nor [is it], in the opinion of the undersigned, attributable to the presence of the foreign body in the eyelid but rather [is] the result of circumstances which coincided with the accident."

The only other medical testimony was given by Dr. Saylor. On May 25, 1962, he wrote the commission:

"The exact cause of Bell's Palsy is unknown, however, a cold draft of air to the side of the face has been the exciting cause in the majority of cases."

At the hearing Dr. Saylor testified:

"Q. Were you able to ascertain [in] this particular case the cause for the Bell's palsy?

"A. The most common cause for Bell's palsy is a direct draft at the side of the face."
 * * * * * *
"Q. When you say a draft, doctor, do you mean a cold draft of air or just a sudden gust of air or wind?

"A. Primarily a change of temperature, colder."

The doctor also testified that the disease "could have" been caused by the draft. He further testified that the disease could also be caused by infection or virus but that neither of these were present.

As to petitioner's condition at the time of the rehearing the doctor testified:

"Further treatment isn't necessary, but observation I think is necessary until the weakness in the right side is completely gone, which may take another six to nine months."

It is the commission's position that the doctor's testimony was too uncertain as to the cause of the "Bell's palsy" and that the commission cannot base an award on conjecture or possibilities. The commission is of the opinion that the petitioner has not affirmatively established all of the material elements necessary to sustain an award to him. In other words the commission is of the opinion that petitioner has not made out a prima facie case. The commission relies on the fact that at one point the doctor testified in answer to a hypothetical question, which assumed facts contrary to those in evidence, that it was "possible not probable" that the draft caused the disease.

 This is not a case of conflicting or equivocal medical testimony. Rather it

is a case in which the commission feels compelled to deny liability because of a lack of medical proof on the question of causation. It is agreed that the accident arose out of and was in the course of employment. It is agreed that the petitioner did not have the condition prior to the accident and did have it after the accident. The only testimony is that a cold draft hit him on the right side of the face. The doctor testified that the development of the condition was consistent with what had happened to petitioner.[1]

"A. (By Dr. Saylor) He did not have an acute infection that would lead you to believe it was a virus involvement and more than likely with the history you would assume it was due to swelling, edema, and thus pinching of the nerve.

"Q. Then can you tell us the cause of the swelling, the pinching of the nerve?

"A. Draft, the change in temperature, shock to the area." (Emphasis added)

At other times the doctor weakened this by use of the words "could have" and "possible". But in any event, although Doctor Saylor did not use the occult words "reasonable medical certainty" nor "reasonable

1. At least two workman's compensation cases dealing with Bell's palsy have been decided by other courts. Lurye v. Stern Bros. Dept. Stores, 275 N.Y. 182, 9 N.E. 2d 828, and Zaft v. Industrial Commission of Ohio, 59 Ohio App. 290, 18 N.E. 2d 122 In both cases it was assumed the Bell's palsy was caused by a sudden cold draft on the side of the face.

medical probability" in expressing his opinion on medical causation these words are not necessary to the proof of a prima facie case in all circumstances.[2] One of the circumstances is where there is expert testimony that the accident "could" produce the injury coupled with the fact that the petitioner did not have the injury before the accident but did have it after the accident. In that circumstance the petitioner has put on a prima facie case. As was said in Charlton Bros. Transp. Co. v. Garrettson, 188 Md. 85, 94, 51 A.2d 642, 646:

> "The law requires proof of probable, not merely possible, facts, including causal relations. Reasoning post hoc, propter hoc is a recognized logical fallacy, a non sequitur. But sequence of events, plus [medical] proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause [citing cases]. We think the surgeon's testimony was admissible and there was legally sufficient evidence that the collision caused the present hernia. We are not required or permitted to assume that the collision and the new hernia were a mere coincidence and that the hernia would have recurred if there had been no collision."

And the Supreme Court of Florida said in Eli Witt Cigar & Tobacco Co. v. Matatics, Fla., 55 So.2d 549, 551:

> "The plaintiff testified that he had never suffered dizzy spells prior to the first accident, that he began to suffer such spells immediately thereafter, and that he had such a spell only three or four days prior to the second accident. *It was also shown by the expert testimony of a physician that a loss of equilibrium could result from a brain concussion.* We think that such evidence fairly warranted an inference of proximate cause and effect between the brain concussion and the dizzy spells, \* \* \*." (Emphasis added)

See, e. g., Clifford-Jacobs Forging Co. v. Industrial Comm., 19 Ill.2d 236, 166 N.E.2d 582; Perkins v. Sunset Tel. and Tel. Co., 155 Cal. 712, 103 P. 190; Boland v. Vanderbilt, 140 Conn. 520, 102 A.2d 362; Carney v. Hellar, 155 Kan. 674, 127 P.2d 496; Cole v. Simpson, 299 Mich. 589, 1 N.W.2d 2; Ketcham v. Thomas, Mo., 283 S.W.2d 642; Ford v. Blythe Bros. Co., 242 N.C. 347, 87 S.E.2d 879. For further cases approving the use of the words "possible", "likely", "probable", "might", or "could" see 66 A.L.R.2d 1082, 1118 Sec. 7(b), Anno. "Admissibility of Opinion Evidence as to Cause of Death or Disease."

---

2. Cf. Southwestern Freight Lines Ltd. v. Floyd, 58 Ariz. 249, 119 P.2d 120, where a doctor's testimony as to what "might happen" as a result of an injury was held to be proper.

In the instant case petitioner did not have Bell's palsy prior to the accident and did have it afterward. The doctor testified that this condition was usually preceded by a cold draft on the face and negatived the other possible medical causes as they applied to petitioner. He "assumed" that the cause of the condition was the cold draft. He stated that it "could" have been caused by the draft which hit petitioner in the face. The petitioner made out a prima facie case and without more sustained his burden of proof.

The commission cites Helmericks v. Airesearch Mfg. Co. of Arizona, 88 Ariz. 413, 357 P.2d 152, in support of the proposition that the word "possibility" may never be considered in assuming medical causation. That case illustrates precisely the distinction we are here making. In the Helmericks case we held that where a doctor could not testify with any certainty whether petitioner's ear condition was a result of having been subjected to high frequency noises or whether it was due *to the progression of a pre-existing disease* that the medical testimony of causation was equivocal. In the instant case it is not disputed that petitioner did not have the condition prior to the accident.

Award set aside.

STRUCKMEYER and JENNINGS, JJ., concur.