495 P.2d 145

Atilano V. **PAYAN**, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, Respondent,

**Maricopa Packing Company**, Respondent Employer,

**State Compensation Fund**, Respondent Carrier.

No. I CA–IC 583.

Court of Appeals of Arizona, Division 1, Department A.

March 29, 1972.

Rehearing Denied May 11, 1972.

Review Denied July 11, 1972.

William B. Revis, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel The Industrial Comm. of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel State Compensation Fund by Ronald M. Meitz, Phoenix, for respondent employer and respondent carrier.

STEVENS, Presiding Judge.

The issue before this Court is the correctness of the award which found that the petitioner had failed to carry his burden of proof in support of his contention that his epilepsy was traumatic and not idiopathic.[2]

2. When John J. Kelley, M.D., whose specialty is neurosurgery, was asked to explain the term "idopathic" his response was as follows:

"Idiopathic is the term that simply means the cause is not evident or not known and there are areas and diseases of the nervous system as well as diseases of the systems where there is no apparent cause. Abnormalities occur either on a hereditary basis or on some inborn metabolic basis that doesn't manifest itself any other way. We use the term idiopathic to mean unknown cause, but with regard to epilepsy, idiopathic covers a specific variety of seizures that typically follow a pattern in terms of age of onset and regularity of occurrence and may be one

The petitioner is a native of Mexico. He speaks no English. His life has been that of a laborer. At one point in the proceedings, approximately 18 months after his injury, he was examined by Paul W. Brewer, Ph.D., a clinical psychologist. Doctor Brewer recognized the very difficult problem of communication through an interpreter and expressed the following findings:

"On the basis of the highest subtest score obtained it is estimated that the patient was originally within the Mildly Mentally Defective Range (WAIS IQ 70–86). At the present time he functions considerably below this level, probably 20–25 points. Particularly outstanding are impaired recent memory functions—patient remembers only three digits forward, and on casually experienced items remembers four out of nine. Older learned material is somewhat low, but not significantly impaired."

We point out Dr. Brewer's findings to illustrate the great difficulty of communication which all of the examining personnel experienced. At the same time the record reflects a true and genuine interest in the petitioner and his problems. The record discloses a genuine effort to reach a proper medical opinion as to the causal relationship between the epilepsy and the trauma.

A brief history will suffice for this matter turns upon the most recent hearing.

On 14 January 1964 at approximately 7:40 A.M. the petitioner was struck on the head by a falling meat hook. He was taken to Memorial Hospital. At approximately 4:00 P.M. he was treated by Louis P. Lutfy, M.D. The petitioner was released from the hospital at approximately 9:10 of the evening of the same day. Thereafter he saw Dr. Lutfy at the doctor's office on the 16th, 17th, 18th and 20th days of the same month. The petitioner lost but two or three days of work and the claim was closed on 4 March 1964 with no allowance

for compensation, he having lost less than seven days work.

On or about 14 December 1964 he filed a petition to reopen, complaining of dizzy spells, loss of weight, nervousness and severe headaches. The petition was entertained on an investigative basis and G. Scott Tyler, M.D., whose specialty is neurological medicine, examined him with the aid of an EEG study. A medical consultation was held and the doctors urged that there be further studies. Thereafter Dr. Brewer conducted his examination. This was followed by an additional medical consultation and the doctors expressed the opinion that the epilepsy was more likely idiopathic than traumatic. Thereafter the petitioner was sent to George G. Saravia, M.D., a psychiatrist. Following Dr. Saravia's report, the petition to reopen was denied on 28 December 1965.

Another petition to reopen was filed in August 1966 and the petition was denied for want of the submission of medical evidence.

■ In May 1969 the petitioner for the first time secured the services of counsel and a petition to reopen was filed, being the petition which is now in question. Hearings were held on 14 January 1970 and 15 June 1970. At the 14th January 1970 hearing Dr. Tyler and Dr. Kelley testified. There appears to be no issue as to the presence of epilepsy, the issue being the underlying cause of the epilepsy. Both doctors recommended more detailed tests. The hearing officer very properly directed that such additional tests be carried out.

The petitioner was hospitalized for several days and extensive tests were conducted under Dr. Kelley's supervision. The doctor again testified at the 15 June 1970 hearing.

The hearing officer ruled that the entire file was in evidence and, after evaluating the evidence, found that the petitioner had not borne his burden of proving a causal

---

of several types that do have a definite hereditary and familial tendency, but are

not related to structural disorders of the brain."

relationship between the epilepsy and the January 1964 trauma. The hearing officer found that the petitioner's epilepsy is "* * * more probably congenital or idiopathic in nature rather than traumatically caused."

The award of the hearing officer denying a reopening was reviewed by The Industrial Commission and affirmed. The matter was then brought to this Court.

From our review of the record it is our opinion that had the hearing officer and the Commission found that the petitioner's epilepsy bore a causal relationship to the trauma and that therefore the matter be reopened the record would have sustained such a finding. On the other hand there is substantial evidence in the file to support the award which was entered.

The award is affirmed.

CASE, J., and D. L. GREER, Superior Court Judge, concur.

NOTE: The Honorable FRANCIS J. DONOFRIO having requested that he be relieved from the consideration of this matter, The Honorable D. L. GREER, a Judge of the Superior Court, was called to sit in his place.