509 P.2d 234

**Jack G. SUTTON, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**A. J. Bayless Markets, Inc., Respondent Employer,**
**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 691.**

Court of Appeals of Arizona, Division 1, Department A.

May 1, 1973.

Robert A. Slonaker, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Indus. Comm. of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by J. Russell Skelton, and Donald F. Schaar, Phoenix, for respondent employer and carrier.

DONOFRIO, Presiding Judge.

This is a writ of certiorari to review the lawfulness of an award of The Industrial Commission of Arizona finding that petitioner Jack G. Sutton has no physical disability resulting from his industrial accident.

Petitioner worked as a baker for 25 years or more, and in the first part of January 1969 began having severe chest problems of coughing and choking while at his work. On January 7, 1969 he went to Dr. George Phares, his family physician, complaining of pain in his chest, shortness of breath, and coughing and perspiring profusely. He was treated with antibiotics and told to stay off work for several days. After remaining home for three days, he returned to work feeling better. After working a couple of weeks, he again suffered the same complaints he had previously experienced. He saw Dr. Phares and was treated by him for a period of time when on April 16, 1969 petitioner was hospitalized. After two days in the hospital the symptoms subsided, but after returning to work the symptoms returned. We deem it unnecessary at this point to recite further medical history as it will be covered later.

The State Compensation Fund issued Notice of Claim Status accepting him for benefits on January 20, 1970. By notice of claim status of March 3, 1970 the Fund

terminated medical benefits. Petitioner filed a timely request for hearing. Thereafter hearings were held in December 1970 on the issue of termination of temporary compensation and medical benefits and discharge of petitioner with no permanent disability.

On May 11, 1971 the Hearing Officer found that petitioner had a preexisting bronchial condition or chronic bronchitis not related to his employment; that this bronchitis was aggravated in part by exposure to flour; and that such aggravation constituted a compensable claim. He further found that at the time of petitioner's discharge on March 3, 1970 he had fully recovered from this aggravation of the preexisting condition. This award was affirmed by the Industrial Commission.

The question presented is whether this award, finding that petitioner has no physical disability resulting from his industrial episode, is reasonably supported by the evidence.

On the strength of the reasoning in Breidler v. Industrial Commission, 94 Ariz. 258, 383 P.2d 177 (1963), and Revles v. Industrial Commission of Arizona, 88 Ariz. 67, 352 P.2d 759 (1960), petitioner contends that he has established a prima facie case by showing that he is now allergic to flour and that he was never allergic to flour prior to the episode beginning in January 1969, and that when this and the testimony of the two doctors (Dr. Phares and Dr. Murray Spotnitz) who testified is taken as a whole, it establishes an industrially related disability. Petitioner argues that the evidence of Dr. Spotnitz, upon whom respondents rely, is negative only, and equivocal in nature. On the other hand, respondents direct the same arguments to petitioner's medical evidence.

Petitioner relies heavily upon the testimony of Dr. Phares to the effect that petitioner was allergic to flour and that he had to be withdrawn from it in order to improve or relieve the ill effects caused by it, as bearing upon his disability. To better evaluate the matter we believe it necessary to quote some of the doctor's testimony when he was questioned as to whether petitioner had an impairment of physical function because of the allergy to flour. The doctor stated:

"Q You have heard the term impairment of function?

"A I have heard the term impairment of function.

"Q Are you familiar with its meaning?

"A Well, from a legal point of view?

"Q No, from a medical point of view.

"A Yes, I think so.

"Q Would there be any impairment of function in the Claimant because of this allergy to flour?

"A I think it is possible that there could be.

"Q Do you have an opinion as to whether or not there is?

"A Whether or not there was? I have to believe there was. If a man is not well, he doesn't function well. And if he is sneezing and coughing and so on, I don't want to eat his bread either. So I think this bears on function in some ways."

In support of the award, respondents rely not only upon Dr. Spotnitz who will be quoted later, but also rely upon Dr. Phares' testimony to the effect that what he felt was an allergy to flour predated petitioner's symptoms of January 7, 1969. They also rely upon the fact that the doctor testified that he performed no skin tests on petitioner (claimant), and that he testified that:

". . . [claimant] may be allergic to flour. I couldn't prove that he was allergic to flour, . . ."

Also, when questioned if he knew the cause of the allergy, the doctor stated:

" No more than any other allergies that crop up.

"Q. It probably is unknown then"

"A. I don't think it is known. I don't think anybody knows. I haven't been in the last few years to any allergic seminars, I know that. But I think when that comes through, it will be of such interest that I will know about it."

Dr. Spotnitz, a specialist in chest conditions, diagnosed petitioner's condition as chronic asthmatic bronchitis which he defined as:

" . . . a term that is defined as a history of a cough almost everyday of the year for at least three months for two consecutive years. And what this means generally is that the patient does have overgrowth or enlargement of the mucous secreting glands of the bronchial tubes, which is usually due to chronic irritation from some cause or other."

To substantiate his diagnosis, Dr. Spotnitz testified to the following history taken from petitioner:

"A. . . . The history I got from Mr. Sutton at that time was that he had been a cigarette smoker since his teens; had smoked one and a half packs of cigarettes a day; from that time continued to smoke; that he had had a cough almost every day of the year for at least two years prior to the admission to the hospital; however, this cough had not bothered him until Thanksgiving of 1968 when he developed a disease that resembled influenza; and since that time, in addition to his cough, he had sudden acute attacks of shortness of breath with wheezing associated with sweating."

As to the cause of chronic bronchitis, the doctor testified:

" . . . some people think they know what causes it, and it is due to cigarette smoking. I don't know the cause of this as yet. In my mind I am not satisfied that we know enough as to why people get this. But certainly smoking is usually a very significant part of the history in those patients that develop this type of problem."

On cross-examination, Dr. Spotnitz specifically excluded petitioner's employment as a cause of the preexisting chronic asthmatic bronchitis:

"Q. Is it your opinion then—let me put it in a question—that you don't think that working around the flour caused this asthmatic bronchitis, the chronic asthmatic bronchitis condition?

"A. Right."

We have no difficulty in finding from an analysis of the record reasonable evidence to support the decision that petitioner's preexisting condition was bronchitis and that it was not causally related to his employment. Although the record does not show that the question of permanent impairment was gone into in great depth, it does show that any impairment of function petitioner may have suffered was caused by the preexisting condition, not the industrial aggravation of that condition. The record showed a temporary aggravation of a preexisting condition which caused only temporary disability.

Reviewing the evidence in the light most favorable for sustaining the Commission's decision, Malinski v. Industrial Commission, 103 Ariz. 213, 439 P.2d 485 (1968), we find the award is reasonably supported by the evidence.

Award affirmed.

OGG and STEVENS, JJ., concur.