IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

GARY D. HACKWORTH,                    )
                                      )
            Petitioner Employee,      )
                                      )
            v.                        )        2 CA-IC 2011-0014
                                      )        DEPARTMENT A
THE INDUSTRIAL COMMISSION OF          )
ARIZONA,                              )        O P I N I O N
                                      )
            Respondent,               )
                                      )
ATLAS COPCO NORTH AMERICA,            )
                                      )
            Respondent Employer,      )
                                      )
LIBERTY MUTUAL INSURANCE              )
GROUP,                                )
                                      )
            Respondent Insurer.       )
                                      )

SPECIAL ACTION – INDUSTRIAL COMMISSION

ICA Claim No. 20101940006

Insurer No. WC608000000

Deborah P. Hansen, Administrative Law Judge
Thomas A. Ireson, Administrative Law Judge

AWARD SET ASIDE

Tretschok, McNamara & Miller, P.C.
  By J. Patrick Butler                                    Tucson
                              Attorneys for Petitioner Employee

The Industrial Commission of Arizona
  By Andrew F. Wade

Phoenix
Attorney for Respondent

Klein, Lundmark, Barberich & La Mont, P.C.
  By Eric W. Slavin

Tucson
Attorneys for Respondents
Employer and Insurer

---

E C K E R S T R O M, Presiding Judge.

**¶1**      In this statutory special action, petitioner employee Gary Hackworth challenges the ruling of the administrative law judge (ALJ) finding his foot injury was not compensable. On review, he argues the independent medical examiner's observation that his injury could have idiopathic causes was an insufficient evidentiary basis for the ALJ to find causation disputed and deny him compensation. We agree and therefore set aside the ALJ's award.

## Factual and Procedural Background

**¶2**      On review, we consider the evidence in the light most favorable to upholding the award, *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, ¶ 16, 41 P.3d 640, 643 (App. 2002), and we deferentially review all factual findings made by the ALJ. *PFS v. Indus. Comm'n*, 191 Ariz. 274, 277, 955 P.2d 30, 33 (App. 1997).

**¶3**      Hackworth worked as a warehouseman for the respondent employer, Atlas Copco North America, since 2005. His job required him to be on his feet for most of the work day and regularly involved lifting mining equipment that weighed over 200 pounds. In 2009, a physician diagnosed Hackworth with a Morton's neuroma in his right foot.

2

Hackworth underwent surgery that year to remove the neuroma and again in 2010 to remove scar tissue and a recurrent neuroma mass. In July 2010, Hackworth filed an application for compensation claiming his work as a warehouseman had caused, contributed to, or aggravated his foot injury. When his claim was denied, Hackworth filed a timely request for a hearing.[1]

¶4 At the hearing, the medical experts agreed Hackworth had a Morton's neuroma in his right foot. They also agreed that repetitive trauma or prolonged pressure on the foot, such as standing for extended periods of time, could cause the injury. Dr. Amram Dahukey, a board-certified podiatrist who had performed the second surgery on Hackworth's foot, testified there was a "reasonable medical probability" that Hackworth's work had contributed to his neuroma, meaning there was a "probability . . . over 50 percent."

¶5 But Dr. Roger Grimes, a board-certified orthopedic surgeon who served as the independent medical examiner in this case, offered a more tentative conclusion.[2] He testified it was "possible" the neuroma had been caused by Hackworth's employment, but Grimes added, "I can't state that to a probability" because "I just don't find a definite correlation." At the conclusion of direct examination, Grimes then answered

---

[1]Hackworth also sought to reopen a claim relating to a back injury, and the hearing on this matter was consolidated with the hearing relating to his foot. Because Hackworth does not raise any issue on review relating to his back injury claim, we do not address it.

[2]"[A]n independent medical examination is not a source of treatment; rather, it is a claims management device that enables a compensation provider to evaluate a claimant's treatment and condition from a source other than the treatment provider." *Moretto v. Samaritan Health Sys.*, 198 Ariz. 192, n.1, 8 P.3d 380, 382 n.1 (App. 2000); *see* A.R.S. § 23-1026; Ariz. Admin. Code R20-5-114.

affirmatively when asked by the respondents whether "all of your opinions today [are] based on a reasonable degree of medical probability."

¶6        The medical literature Hackworth introduced into evidence stated that a "Morton's neuroma is most likely a mechanically induced degenerative neuropathy" that results from "excessive motion" in parts of the foot and "excessive weightbearing stress on the forefoot, particularly by wearing pointed and high-heeled shoes." When Dr. Grimes was questioned by the respondents about the "typical or usual etiology" for a neuroma such as the one Hackworth had suffered, he replied: "[M]ost often we don't know the reason for it. I think that on occasion poorly fitting footwear, sometimes prolonged walking on a hard surface might be associated with neuroma." On cross-examination, Grimes elaborated on the topic of causation as follows:

> Q: So then let's move on to the neuroma, which is a gradual onset claim. When you say that the possible causes—that it's possible that the heavy lifting and being on his feet all the time could possibly be a cause for the neuromas, what other conditions are you looking at that you're considering as causation factors?
>
> A: Well, it's frequently [id]iopathic. We don't have a reason for it happening.
>
> Q: You would agree that, in terms of the weight bearing and repetitive trauma, that lifting 200 pounds each day frequently would be severe stress on the feet—could cause severe stress on the feet?
>
> A: The prolonged weight bearing I think is possible. The lifting, I think is certainly possible, but less likely.
>
> . . . .

4

> Q: Why the lifting? Why do you think that's less possible?
>
> A: Because I don't see that as producing—necessarily producing a stress on his foot.

Grimes acknowledged that Hackworth did not complain of foot problems in 2006 or early 2007, in his first years of work with Atlas, which led Grimes to conclude the neuroma had not resulted from a separate work injury Hackworth had sustained in that period. But Grimes offered no further testimony about the neuroma's causal connection to Hackworth's employment other than saying such a connection was "possible."

¶7 The ALJ found there was a conflict in the medical testimony and accepted the opinion of Dr. Grimes as "most well-reasoned and correct."[3] Because "Dr. Grimes opined that he cannot state to a probability that the applicant's industrial activity caused the right foot neuroma," the ALJ concluded that "there [wa]s no medical basis for granting compensability." The ALJ's decision denying compensation was affirmed after Hackworth filed a request for administrative review.[4] We have jurisdiction to review the

---

[3]Respondents also raised a statute-of-limitations defense under A.R.S. § 23-1061(A), *see Allen v. Indus. Comm'n*, 152 Ariz. 405, 412, 733 P.2d 290, 297 (1987), which the ALJ expressly declined to rule upon. Because the timeliness of Hackworth's claim has not been factually determined, *see Saylor v. Indus. Comm'n*, 171 Ariz. 471, 473, 831 P.2d 847, 849 (App. 1992), the issue is not before us on review. *See Carbajal v. Indus. Comm'n*, 223 Ariz. 1, ¶¶ 20-21, 219 P.3d 211, 215 (2009); *see also* A.R.S. § 23-951(B) (judicial "review shall be limited to determining whether or not the commission acted without or in excess of its power and, if findings of fact were made, whether or not such findings of fact support the award, order or decision").

[4]Upon the resignation of Deborah P. Hansen, who had issued the no-compensation award, the case was transferred to Thomas A. Ireson for review.

ALJ's ruling pursuant to A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Rule 10, Ariz. R. P. Spec. Actions.

## Discussion

**¶8** Hackworth summarizes the foregoing by noting that the "uncontroverted medical literature in evidence states Morton's neuromas are caused by repetitive trauma to the foot." Hackworth's treating specialist testified the right foot problem here was "caused or aggravated by [Hackworth's] job requiring him to be on his feet most of the day lifting heavy loads." Dr. Grimes agreed it was possible the condition was caused by Hackworth's work duties and provided "no facts or evidence" to suggest it was not. Under these circumstances, Hackworth argues, the "doctor's generic opinion . . . , unsupported by specific facts or medical literature, cannot reasonably be relied upon by the ALJ to support a finding of non-compensability." We agree.

**¶9** "To prove compensability, the claimant must establish all the elements of his claim," including that he has "suffered an injury and that the injury was causally related to his employment." *W. Bonded Prods. v. Indus. Comm'n*, 132 Ariz. 526, 527, 647 P.2d 657, 658 (App. 1982). A claimant must prove both medical and legal causation to establish a compensable claim. *Grammatico v. Indus. Comm'n*, 208 Ariz. 10, ¶ 8, 90 P.3d 211, 213-14 (App. 2004), *aff'd*, 211 Ariz. 67, 117 P.3d 786 (2005). Medical causation, which is at issue here,[5] requires proof that the employment caused or

---

[5]Although "idiopathic" causes or conditions are discussed frequently in cases involving work-related falls where legal causation is at issue, *see, e.g.*, *Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 95-96, 796 P.2d 893, 897-98 (1990); *Valerio v. Indus. Comm'n*, 85 Ariz. 189, 191-92, 334 P.2d 768, 769-70 (1959); *PMC Powdered*

6

contributed to the injury. *See* Ariz. Const. art. XVIII, § 8; A.R.S. §§ 23-901(13)(c), 23-901.01(A); *Ford v. Indus. Comm'n*, 145 Ariz. 509, 517-18, 703 P.2d 453, 461-62 (1985). When the cause of an injury is not apparent to a lay person, causation must be established by expert testimony, *Fry's Food Stores v. Indus. Comm'n*, 161 Ariz. 119, 121, 776 P.2d 797, 799 (1989); *Phelps v. Indus. Comm'n*, 155 Ariz. 501, 505, 747 P.2d 1200, 1204 (1987), and proven "to a reasonable degree of medical probability." *Payne v. Indus. Comm'n*, 136 Ariz. 105, 108, 664 P.2d 649, 652 (1983). If no conflict exists in the medical testimony, the ALJ is bound to accept it. *Crystal Bottled Waters v. Indus. Comm'n*, 174 Ariz. 184, 185, 847 P.2d 1131, 1132 (App. 1993). If medical testimony conflicts, however, the ALJ must resolve the conflict. *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19, 695 P.2d 261, 268 (1985). We will not disturb the ALJ's resolution of such a conflict "unless it is wholly unreasonable." *Id.*

¶10 Equivocal or speculative medical testimony is insufficient to support an award or to create a conflict in the evidence. *See Rahar v. Indus. Comm'n*, 94 Ariz. 170, 175, 382 P.2d 656, 658-59 (1963); *Walters v. Indus. Comm'n*, 134 Ariz. 597, 600, 658 P.2d 250, 253 (App. 1982); *Harbor Ins. Co. v. Indus. Comm'n*, 25 Ariz. App. 610, 612, 545 P.2d 458, 460 (1976); *Marquez v. Indus. Comm'n*, 18 Ariz. App. 16, 18, 499 P.2d 747, 749 (1972). Medical testimony is equivocal when it is subject to more than one interpretation or when the expert avoids committing to a particular opinion. *Rosarita*

*Metals Corp. v. Indus. Comm'n*, 15 Ariz. App. 460, 463-64 & 463 n.1, 489 P.2d 718, 721-22 & 721 n.1 (1971), medical and legal causation are distinct inquiries, *Nowlin v. Indus. Comm'n*, 167 Ariz. 291, 295 n.3, 806 P.2d 880, 884 n.3 (App. 1990), and legal causation is not disputed in this case.

*Mexican Foods v. Indus. Comm'n*, 199 Ariz. 532, ¶ 13, 19 P.3d 1248, 1252 (App. 2001); *State Comp. Fund v. Indus. Comm'n*, 24 Ariz. App. 31, 36, 535 P.2d 623, 628 (1975).

¶11          Here, Dr. Grimes's testimony was equivocal. On direct examination, he appeared to make a strong statistical claim that a Morton's neuroma is "[m]ost often" due to an "idiopathic" cause, meaning it is "a disease of unknown cause." *Stedman's Medical Dictionary* 617 (3d unabridged lawyers' ed. 1972).[6] Taken literally, this claim would conflict with the medical literature admitted into evidence, which asserted a "Morton's neuroma is most likely a mechanically induced degenerative neuropathy" that "exhibits predilection for fashion-minded women . . . who frequently wear pointed and high-heeled shoes." When later pressed on the issue, however, Grimes appeared to make a weaker claim that idiopathic causes are "frequently" responsible for the condition—a tempered assertion not necessarily creating any conflict.

¶12          Similarly, when Dr. Grimes initially was asked about the strength of his opinion as to causation, he appeared to deny attributing any cause or drawing any probabilistic conclusion, explaining he "c[ould]n't state that to a probability." Yet he later appeared to acknowledge that "stress on [the] foot" would increase the likelihood of a Morton's neuroma, and he concluded his direct testimony by broadly asserting that all his opinions were "based on a reasonable degree of medical probability."

---

[6]We note that the term "idiopathic" can also refer to something that is "peculiar to the individual: innate." *Webster's Third New International Dictionary* 1123 (1971); *accord Chalupa v. Indus. Comm'n*, 17 Ariz. App. 386, 388 n.2, 498 P.2d 228, 230 n.2 (1972). Dr. Grimes consistently used the term "idiopathic" to refer to a disease without any known type of cause, and we do not find his testimony to be equivocal in the sense that it shifted between the meanings of the term.

¶13    Under one interpretation of his testimony, Dr. Grimes would not necessarily disagree with the causal conclusion reached by Dr. Dahukey or the medical literature in evidence; rather, Grimes would be expressing a limited opinion as to possible causes and drawing no definite conclusion of his own on the issue—essentially espousing the cautionary view that "positive knowledge cannot be had as to causation." *Harbor Ins. Co.*, 25 Ariz. App. at 612, 545 P.2d at 460. When seen in this light, Grimes's testimony establishes a prima facie case that Hackworth suffered a compensable injury—even though the "occult words . . . 'reasonable medical probability'" were not uttered for this purpose—because Grimes essentially testified that the industrial conditions to which Hackworth was exposed "'could' produce the injury" and that Hackworth "did not have the injury before the [exposure] but did have it after." *Breidler v. Indus. Comm'n*, 94 Ariz. 258, 261-62, 383 P.2d 177, 179 (1963).

¶14    Under a different interpretation—the one apparently adopted by the ALJ— Dr. Grimes could be seen as disagreeing with Dr. Dahukey and maintaining that a physician could not find industrial causation here to a reasonable degree of medical probability. Under this view, alternative causes would be just as likely or more likely to be responsible for the injury than Hackworth's employment. It is worth mentioning, perhaps, that Grimes never affirmatively stated this proposition, which should militate against such an interpretation of his testimony. Nor did he say that industrial causation was "unlikely," "improbable," or "possible but not probable." *Cf. Harbor Ins. Co.*, 25 Ariz. App. at 612, 545 P.2d at 460 (analyzing case where both experts agreed "they did not know the cause of rheumatoid arthritis" but one nevertheless opined "trauma is not

9

the cause"). That either interpretation finds support in the record illustrates the essential flaw with Grimes's testimony. He was noncommittal and equivocal insofar as he avoided taking a definite position on the causation issue. Overall, he spoke more of possibility than probability. *Cf. Helmericks v. AiResearch Mfg. Co. of Ariz.*, 88 Ariz. 413, 415-16, 357 P.2d 152, 153-54 (1960) (holding expert testimony equivocal when physician testified about "possible causal relationship" and could not state with reasonable certainty whether ear condition resulted from high frequency noise or progression of preexisting disease).

¶15 Even if Dr. Grimes's testimony were unequivocal, however, we still would find his opinion insufficient to rebut the testimony and evidence establishing causation. Medical evidence need show only probabilities, not certainties, *see Phelps*, 155 Ariz. at 506, 747 P.2d at 1205; *Payne*, 136 Ariz. at 108, 664 P.2d at 652, and "[m]edical opinions not based on medical findings should not form the basis of an award." *Hunter v. Indus. Comm'n*, 130 Ariz. 59, 61, 633 P.2d 1052, 1054 (App. 1981). A physician's general comment about the incomplete state of medical knowledge does not suffice to rebut testimony that a particular claimant has suffered a compensable injury in a given case. *See, e.g.*, *id.* (finding no evidence to support denial of compensation when physician merely offered "personal view that medical science has not yet determined the long-term effects of meat wrapper's asthma"). Accordingly, when a physician simply offers speculation that another cause might have been responsible for an injury, there is "no credible medical evidence . . . upon which to base [an] award of no compensation." *Belshe v. Indus. Comm'n*, 98 Ariz. 297, 303-04, 404 P.2d 91, 96 (1965).

¶16 Groundless skepticism, in other words, is not competent evidence to support an award, even when offered by a medical professional. *See, e.g.*, *id.* at 299, 303-04, 404 P.2d at 93, 96 (setting aside award where physician made no tests or inquiries to support alternative theories of causation, and alternative theories conflicted with evidence in record). As the philosopher David Hume observed, "One event follows another; but we never can observe any tie between them." *Of the Idea of Necessary Connexion*, in *An Enquiry Concerning Human Understanding* § 7, pt. II, at 49 (Eric Steinberg ed., 2d ed. 1993). This point of logic is well accepted in our case law. *See Breidler*, 94 Ariz. at 262, 383 P.2d at 179 (recognizing fallacious nature of *post hoc*, *ergo propter hoc* reasoning). "'But sequence of events, plus [medical] proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause.'" *Breidler*, 94 Ariz. at 262, 383 P.2d at 179, *quoting Charlton Bros. Transp. Co. v. Garrettson*, 51 A.2d 642, 646 (Md. 1947) (alteration in *Breidler*) (emphases in *Charlton Bros.*). Merely pointing out that an inference about causation could be mistaken—that there could, in fact, be a different and perhaps unknown cause operating to produce an observed effect—does not render causation disputed or serve as a ground for denying compensation. Dr. Grimes's testimony did no more than this.

¶17 In sum, Grimes's testimony about idiopathic or unknown causes simply noted that the injury suffered here could be coincidental and unrelated to the alleged (and admittedly possible) workplace cause. His statement that Morton's neuromas are "most often" due to unknown causes implicitly recognized that the causes of this injury can be known in some cases. Yet Grimes pointed to no fact or finding tending to rule out or cast

11

doubt upon Hackworth's prolonged standing at work as a cause of, or contributing factor to, his injury. Hence, there was no evidence to support a conclusion that an unknown cause, rather than a known cause, was most likely operating here.

¶18 Indeed, Dr. Grimes acknowledged that standing on a hard floor for long periods of time could possibly have caused Hackworth's injury, and, further, that this was a more likely cause than other admittedly possible causes, such as lifting heavy items, because prolonged standing creates "stress on [the] foot." The injury was correlated with the very activity Grimes posited could produce it and make it more probable. Insofar as Grimes disputed a causal connection because the correlation was not "definite," it is unclear precisely what he meant by this term.[7] But it is clear enough that whatever he meant is not relevant to the question of medical causation under Arizona law. In the event Dr. Grimes ever took a position that conflicted with that of Dr. Dahukey, the ALJ's acceptance of Grimes's conclusion was "wholly unreasonable." *Stainless Specialty Mfg. Co.*, 144 Ariz. at 19, 695 P.2d at 268.

¶19 We emphasize that our decision here must be understood in terms of the facts of our case and the nature of the medical testimony offered. Sometimes a doctor's training, experience, and observations will allow him or her to draw an informed conclusion that a patient's condition is more likely idiopathic than caused by a workplace

---

[7]In seeking a "definite correlation," Grimes appeared to demand what he deemed impossible, requiring a "definite" showing that a known cause was operating even though he maintained that unknown causes "frequently" were at play and never could be ruled out. In this way, Grimes seemed to deny that any knowledge of causation is possible— even the negative knowledge that would serve as the basis of his belief that the cause of a Morton's neuroma is "most often" unknown.

12

accident, and in that event the doctor's opinion will sustain an award of no compensation. *See, e.g.*, *Payan v. Indus. Comm'n*, 17 Ariz. App. 20, 20 n.2, 22, 495 P.2d 145, 145 n.2, 147 (1972) (analyzing idiopathic versus traumatic epilepsy). The circumstances of a given case may cast doubt upon a putative workplace cause and increase the likelihood of an idiopathic one; and in such event a medical opinion will not be rendered nil or deemed speculative simply because the opinion cannot be offered with certainty. *See Harbor Ins. Co.*, 25 Ariz. App. at 612, 545 P.2d at 460. Sometimes the evidence may support either an award of compensation or no compensation. *E.g.*, *Payan*, 17 Ariz. App. at 22, 495 P.2d at 147.

¶20 Our ruling today reaffirms but does not expand the principle that conjecture, speculation, and skepticism not rooted in the record or the particular facts of the claimant's case will not support an award. *Treadway v. Indus. Comm'n*, 69 Ariz. 301, 307-08, 213 P.2d 373, 377 (1950); *State Comp. Fund*, 24 Ariz. App. at 36, 535 P.2d at 628. A medical examiner's unwillingness to assent to a conclusion about medical causation, based exclusively on the speculative possibility of unknown causes for an injury, cannot be the basis for denying an otherwise compensable claim.

### Disposition

¶21 The only reasonable interpretation of the medical evidence here was that Hackworth established causation for his foot injury to a reasonable medical probability. The ALJ's award of no compensation therefore is set aside.

/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge


/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge

14