NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TUCSON UNIFIED SCH DIST 1, *Petitioner Employer*,

AZ SCHOOL ALLIANCE FOR WORKERS COMPENSATION POOL,
*Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

CAITLAIN TORRES, *Respondent Employee*.

No. 1 CA-IC 23-0036
FILED 01-07-2025

Special Action – Industrial Commission
ICA Claim No. 20222310571
Carrier Claim No. 2022000351A
The Honorable Karen E. Karl, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Moeller Law Office, Tucson
By M. Ted Moeller
*Counsel for Petitioner Employer and Carrier*

The Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Dee-Dee Samet, P.C., Tucson
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**C A T T A N I**, Judge:

**¶1** Tucson Unified School District and its insurance carrier (collectively, "TUSD") seek special action review of an Industrial Commission of Arizona award and decision upon review finding Caitlain Torres's industrial injury not medically stationary. For reasons that follow, we affirm the award.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** Torres worked as a school monitor for TUSD. She injured her ankle in August 2022 while breaking up a fight between students. She filed a workers' compensation claim, which was accepted.

**¶3** Torres was treated by Dr. George Abdelmessieh, a board-qualified podiatrist, for several months. In April 2023, TUSD requested an evaluation by Dr. William Leonetti, a board-certified podiatric physician. After Dr. Leonetti found that Torres's injury was medically stationary, TUSD closed Torres's claim. Torres requested a hearing.

**¶4** An administrative law judge ("ALJ") heard testimony from both doctors, Torres, four of her colleagues at TUSD, and Torres's mother-in-law.

**¶5** Dr. Abdelmessieh testified that he diagnosed Torres with insertional Achilles tendinopathy and Achilles tendonitis based on physical examinations, ultrasounds, and X-rays of Torres's ankle. Torres was given a protective boot and heel lifts to alleviate her symptoms but still experienced pain that caused her to limp and hindered her ability to patrol the campus as a school monitor. Due to Torres's limited improvement after using the boot and heel lifts, Dr. Abdelmessieh recommended surgery to debride Torres's Achilles tendon and reattach it to the heel bone.

¶6        Dr. Leonetti testified that he noticed a limited range of motion in both of Torres's ankles during his physical examination. He opined that she had a pre-existing deformity in both heels. He ordered an MRI after his initial evaluation to assess whether there were pathological reasons for her ongoing pain. He testified that, based on his review of the MRI, there was no pathological reason for Torres's pain. He explained that the MRI showed an intact Achilles tendon with no inflammation, tenosynovitis, or tearing. He concluded that Torres's work injury was a "temporary exacerbation" of her pre-existing condition and had become stationary.

¶7        Torres's colleagues and her mother-in-law testified that Torres showed signs of pain and reduced mobility following the injury. These witnesses and Torres herself further testified that she had not had any issues with her ankle before the injury.

¶8        The ALJ found that Torres, her colleagues, and her mother-in-law had credibly testified that her symptoms arose after her injury and continued to cause difficulty walking. The ALJ gave less weight to Dr. Leonetti's opinion (based on his review of the MRI) that there was no evidence of ongoing injury. Accordingly, the ALJ adopted Dr. Abdelmessieh's conclusion that Torres was not medically stationary and awarded her benefits for additional active treatment. TUSD requested review, and the ALJ affirmed.

¶9        TUSD timely petitioned for special action review. We have jurisdiction under A.R.S. §§ 12-120.21(A)(2), 23-951(A) and RPSA 21–26.

## DISCUSSION

¶10        In reviewing workers' compensation awards, we defer to the ALJ's factual findings but independently review legal conclusions. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We will affirm the award "if it is reasonably supported by the evidence after reviewing the evidence in a light most favorable to sustaining the award." *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). When medical expert opinions differ, the ALJ must resolve those conflicts. *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶¶ 25–26 (App. 2000). We defer to the ALJ's resolution unless it "cannot be reasonably supported on any reasonable theory of the evidence." *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975).

¶11        An injury is stationary if "nothing further in the way of medical treatment is indicated to improve that condition." *Tsosie v. Indus. Comm'n*, 183 Ariz. 539, 540 (App. 1995). A claimant must prove by a preponderance of the evidence that her condition is not stationary to

continue receiving benefits for active treatment.  *See Lawler v. Indus. Comm'n*, 24 Ariz. 282, 284 (App. 1975); *Rosarita Mexican Foods v. Indus. Comm'n*, 199 Ariz. 532, 539, ¶ 26 (App. 2001).

**¶12**　　　　The ALJ's conclusion that Torres's condition was not stationery was supported by testimony from Dr. Abdelmessieh as well as Torres's other witnesses.  TUSD argues, however, that the ALJ erred by finding Dr. Abdelmessieh's testimony to be credible, urging that his opinions were equivocal and lacked foundation because he did not review the MRI.  *See Hackworth v. Indus. Comm'n*, 229 Ariz. 339, 343, ¶ 10 (App. 2012) ("Medical testimony is equivocal when it is subject to more than one interpretation or when the expert avoids committing to a particular opinion."); *cf. Fry's Food Stores v. Indus. Comm'n*, 161 Ariz. 119, 122 (1989) (explaining that a factual inaccuracy compromises medical testimony if the fact is material or significant to the doctor's opinion).  But Dr. Abdelmessieh's opinion was adequately supported by his physical examinations, X-rays, and ultrasounds.  Dr. Abdelmessieh testified that he did not review the MRI because the ultrasound results were conclusive.  And he was clear that his opinion of Torres's condition and need for active treatment would not change regardless of what the MRI showed.

**¶13**　　　　TUSD also contends the ALJ's award was legally defective because it was conditioned on Dr. Abdelmessieh's future review of the MRI.  We disagree.  The ALJ expressly stated, "While Dr. Abdelmessieh did not review the April 20, 2023 MRI, I remain persuaded that active care is appropriate."  The award did not order Dr. Abdelmessieh to review the MRI before providing treatment.  TUSD's argument presupposes that the MRI was dispositive and that Dr. Leonetti's interpretation was thus more credible than Dr. Abdelmessieh's, which was based on other tests and findings.  But the ALJ disagreed when resolving the conflict in the medical experts' opinions.  We will not reweigh the evidence.

**CONCLUSION**

**¶14**　　　　For the foregoing reasons, we affirm the award.

