499 P.2d 747

Ruben J. MARQUEZ, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Swift and Company, Respondent Employer,

Maryland Casualty Company, Respondent Carrier.

No. I CA–IC 572.

Court of Appeals of Arizona,
Division 1,
Department B.

July 18, 1972.

Rehearing Denied Aug. 29, 1972.

Review Denied Nov. 21, 1972.

---

William B. Revis, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent, The Industrial Comm. of Ariz.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshear, by Ralph E. Mahowald, Phoenix, for respondent employer and carrier.

HAIRE, Chief Judge, Division 1.

In this review by certiorari of an Industrial Commission award granting temporary disability benefits only, we are asked to consider whether the Commission and hearing officer improperly ignored letters from a physician in Denver, Colorado, relative to surgery performed on petitioner after an industrial accident.

On March 27, 1969, the petitioner, Ruben Marquez, injured his back while lugging beef during the course of his employment with Swift & Company. Petitioner did not continue working and went to Dr. Franc Brodar, the company physician who referred him to Dr. Paul E. Palmer, an orthopedic surgeon. The following day, March 28, petitioner visited Dr. Palmer, who diagnosed his injury as low back strain. The petitioner continued under Dr. Palmer's care until June 5, 1969 at which time he was released from further medical treatment.

In April, 1969, the petitioner moved to Denver, Colorado and did not return to work at Swift & Company. Approximately ten months later, on February 23, 1970, the petitioner, complaining of back pain, saw Dr. William F. Gerber, a physician specializing in neurological surgery in Denver. The petitioner was hospitalized and on March 12, 1970, underwent a lumbar laminectomy and excision of ruptured invertebral disc.

Petitioner initially filed a claim for workmen's compensation benefits on April 7, 1969. On April 15, 1969, the insurance carrier issued its notice of claim status terminating compensation benefits. The petitioner filed a "petition to reopen" claim on June 5, 1969 which was denied by the insurance carrier by their notice of claim status issued July 1, 1969.[1] Timely request for a hearing was filed and formal hearing was held in May, 1970.

At the hearing, Dr. Palmer testified and a written report from Dr. Gerber was received into evidence. The medical reports and testimony of Dr. Palmer revealed that he had examined and treated the petitioner on March 28, 1969, the day after the injury, and on three subsequent occasions. He performed customary and complete orthopedic examinations. Dr. Palmer characterized petitioner's injury as "strain of the back" with symptoms primarily in the mid-back. In addition, Dr. Palmer testified that he found no indication of disc disease or disc problems in the lumbosacral area. When asked to comment on the findings and treatment given by Dr. Gerber, Dr. Palmer replied:

"A. I can only say that based on my examination and observance of Mr. Marquez, he did not at any time during the period I saw him and examined him show any findings to indicate a herniated disc in the lumbar spine. He had no complaints of that type of a problem either."

Dr. Palmer further testified:

"I have yet to find a patient who turned out to be [sic] an extruded disc that did not have objective findings."

In a letter admitted into evidence by the hearing officer, Dr. Gerber reported that

---

1. This "petition to reopen", filed before petitioner retained counsel, has been treated by the Commission as a timely request for hearing, and not as a formal petition to reopen.

on March 12, 1970, the petitioner underwent a lumbar laminectomy and excision of ruptured invertebral disc. In contrast to Dr. Palmer's testimony, Dr. Gerber concluded in his report:

"It is my opinion that the [petitioner] suffered a ruptured lumbar invertebral disc on March 18, 1969. He is recovering satisfactory following surgical removal [of] ruptured disc."

The hearing officer relied on the medical evidence and medical testimony of Dr. Palmer in finding that the petitioner had no residual disability resulting from or attributable to the industrial episode. The hearing officer found that the petitioner was entitled to medical, surgical and hospital benefits from March 27, 1969 through June 5, 1969, but that the petitioner's condition became medically stationary on June 5, 1969 and is now stationary insofar as referable to the industrial episode. In addition, the hearing officer found that Dr. Gerber's report was equivocal and speculative relative to the causal relationship between the industrial accident and the subsequent surgery and that an award could not be based on such speculation.

The findings and award were affirmed by the Industrial Commission on September 8, 1970.

Apparently relying on a statement in the hearing officer's findings that Dr. Gerber's report "does not indicate the back area of surgical involvement as compared to the initial injury" the petitioner obtained from Dr. Gerber an additional report which specified the area of surgical involvement. On October 6, 1970, this report was submitted to the Industrial Commission along with a motion to remand for further proceedings to consider Dr. Gerber's second report. This motion was not acted upon.

Petitioner contends that the Industrial Commission erred in affirming the award and in failing to remand.

There is no question on this appeal regarding whether or not an industrial injury occurred on March 27, 1969 nor the Commission's award of temporary disability. Only that portion of the Commission's award which found no relationship between the initial injury and petitioner's back condition which resulted in the March, 1970 surgery is at issue.

Petitioner raises two questions regarding the Commission's treatment of Dr. Gerber's reports. Petitioner contends that Dr. Gerber's first report was not, as the hearing officer found, equivocal and speculative. Next, petitioner contends that if the first report were in fact equivocal, the equivocation was eliminated by Dr. Gerber's second report and the Commission should have remanded for further proceedings to consider the latter report.

The hearing officer's finding that Dr. Gerber's opinion was equivocal and speculative was based on the fact that his report did not indicate the back area of surgical involvement as compared to the initial injury and that Dr. Gerber apparently had no medical records or medical history available to him other than the petitioner's recital on which to base his opinion. Dr. Gerber's report was not filed until the day before the hearing and of course he was not available for cross-examination.

Dr. Gerber's second report was filed with the Industrial Commission 28 days after the hearing officer's findings and award had been reviewed and affirmed by the Commission. The report was not available for consideration at the hearing nor were further proceedings held or requested at that time in order to consider it. This report indicates the area of surgical involvement as the left side at the L5–S1 level. Although the latter report clarifies Dr. Gerber's first report regarding the specific area of surgery, the hearing officer's other objection remains.

■■■ If Dr. Gerber's opinion is equivocal and speculative, it is insufficient to sustain a compensable award. In re Estate of Bedwell, 104 Ariz. 443, 454 P.2d 985 (1969). If on the other hand, Dr. Gerber's opinion is not equivocal and speculative, it still would not alter the situation facing this Court. When viewed in a light most

favorable to the petitioner, that is, assuming that Dr. Gerber's opinion is unequivocal and taking into account his second report, the evidence, at best, conflicts with the testimony of Dr. Palmer. The hearing officer accepted the testimony of Dr. Palmer. It is well established that an award based on conflicting medical testimony will not be disturbed on appeal. Hershner v. Industrial Commission, 14 Ariz.App. 539, 484 P.2d 1068 (1971).

 Finally, petitioner argues that there can be no conflict in medical testimony because the hearing officer improperly accepted Dr. Palmer's testimony. Petitioner contends that Dr. Palmer's opinions were based on incorrect assumptions of fact and should have been disregarded under the rule of Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488 (1950). The crux of his argument is that Dr. Palmer incorrectly assumed that the petitioner had no complaints of pain or was mistaken regarding the precise location of the pain. Our review of the record indicates that Dr. Palmer was not unaware of the petitioner's complaints of pain either at the time the petitioner was under his care or at the time of the hearing. Instead, Dr. Palmer found no objective findings to substantiate the complaints. In his report of June 5, 1969, Dr. Palmer stated: "[T]he patient demonstrates no objective findings to indicate the reason for his continued complaints." The record indicates that Dr. Palmer's diagnosis was based both on his interpretations of petitioner's complaints and on the lack of objective findings to substantiate the complaints. Furthermore, the diagnosis rested most heavily on the lack of objective findings.

The petitioner's reliance on Eagle, *supra*, is misplaced. In Eagle, the physician's diagnosis was based on the faulty assumption that there had been no head injury. In the present case, Dr. Palmer was aware that an accident had occurred, the nature of the accident, the type of work the petitioner was doing, and the complaints of the petitioner. In addition, Dr. Palmer treated the petitioner on the day after the accident and on three subsequent occasions. He performed customary and complete orthopedic examinations. In reality, the petitioner objects to Dr. Palmer's unfavorable medical conclusions.

Our review of the record reveals that the Commission properly considered the testimony of Dr. Palmer. The evidence is sufficient to justify the award.

The award is affirmed.

EUBANK and JACOBSON, JJ., concur.