658 P.2d 250

Charles WALTERS, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Desert Drywall, Respondent Employer,

The Western Fire Insurance Company, Respondent Carrier.

No. 1 CA–IC 2720.

Court of Appeals of Arizona,
Division 1,
Department C.

Dec. 21, 1982.

Dee-Dee Samet, P.C. by Dee-Dee Samet, Tucson, for petitioner.

James A. Overholt, Acting Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Slutes, Browning, Sakrison & Grant, P.C. by James M. Sakrison, Tucson, for respondent employer and respondent carrier.

## OPINION

JACOBSON, Presiding Judge.

This review of an Industrial Commission award requires a determination of whether in an impairment rating setting an Administrative Law Judge may completely disregard a medical opinion because it fails to consider subjective pain.

In August 1979, the petitioner, Charles Walters, a drywall construction worker, sprained his ankle at work. His claim for workers' compensation benefits was accepted. He was referred to Richard Toll, M.D., an orthopedic surgeon, for treatment. Dr. Toll performed a tenodesis to remedy lateral weakness in the ankle. After surgery, the claimant reported persistent pain and Dr. Toll observed swelling and synovial thickening. He discharged the petitioner from medical treatment on December 23, 1980, with a 40% permanent impairment of the left leg.

In February 1981, the respondent carrier arranged a group medical consultation. The consultants concluded that the industrial injury was medically stationary and that it had caused a 20% permanent impairment of the left leg.

Relying on this report, the carrier issued a notice of claim status terminating temporary compensation with a scheduled 20% permanent impairment of the left leg. This notice was protested and hearings were scheduled. Pending the scheduled hearings, at the carrier's request, Warren D. Eddy, M.D., an orthopedic surgeon, examined the petitioner to evaluate his impairment. Dr. Eddy concluded that the industrial injury had caused a 10% permanent impairment of the left leg.

At the scheduled hearings, the petitioner, Dr. Toll, John Wright Cortner, M.D., an orthopedic surgeon and one of the group consultants, and Dr. Eddy appeared.

The medical testimony relating to the percentage of impairment to the left leg may be summarized as follows: Dr. Toll found a 40% impairment—20% related to objective findings under the AMA Guides and 20% related to subjective pain. The group consultants, testifying through Dr. Cortner, found a 20% objective impairment under AMA Guides, but did not consider subjective complaints or give an impairment rating based upon subjective pain. Dr. Eddy found a 10% impairment—7% related to objective findings and 3% attributable to subjective pain.

The Administrative Law Judge issued an award finding that the claimant had a 10% permanent impairment of the left leg that entitled him to scheduled permanent partial disability. The dispositive finding was as follows:

9. Inasmuch as the group consultants did not consider the applicant's subjective complaints of pain in arriving at their rating of impairment, it is not felt that their opinion should be given consideration, ... The opinions of the only two physicians who took into consideration the applicant's subjective complaints of pain in arriving at their rating of impairment are in conflict. This conflict is resolved by the adoption of Dr. Eddy's opinion as being more probably correct.

This award was affirmed on administrative review. This special action followed.

■ Claimant first argues that based upon the humanitarian aspects of the Workers' Compensation Law, we should adopt a rule that would require administrative law judges to give greater weight to the opinions of board certified treating physicians than that of a doctor who examines the claimant only once. Since this argument has been urged in other Workers' Compensation cases, but rejected in memorandum decisions of this court, we now feel the reasons for this rejection should be fully stated.

■ We start with the long standing rule in this jurisdiction that where there is a conflict between the opinions of equally qualified medical experts concerning the source of or the extent of a worker's disability, the judiciary will not require the Industrial Commission to accept one opinion over the other. *Condos v. Industrial Commission,* 92 Ariz. 299, 376 P.2d 767 (1962). This rule is founded historically upon the human experience that the trier of fact, with live bodies before it, is in the most advantageous position to weigh the evidence, judge credibility, and evaluate the nuances of witness demeanor that adds up to a conviction that one witness' testimony is entitled to more weight than another. Added to this historical perspective is the statutory authorization granted to administrative law judges to determine all issues affecting compensation under the Act, *see* A.R.S. §§ 23–941 and 942, and limiting judicial review of those determinations to ascertaining whether "if findings of fact were made, whether or not such finding of fact supports the award...." A.R.S. § 23–951(B).

Claimant would impose a limitation upon this wide-ranging search for the truth by requiring a *per se* rule that certain types of witnesses are to receive greater credence than others. The Federal 6th Circuit Court of Appeals adopted such a *per se* rule in social security cases in *Allen v. Califono,* 613 F.2d 139, 145 (6th Cir.1980).

> In determining the question of substantiability of evidence, the reports of physicians who have treated a patient over a period of time or who are consultants for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purposes of defending against a disability claim.

However, even the cases cited by *Allen* in support of that proposition do not so hold. In *Whitson v. Finch,* 437 F.2d 728 (6th Cir.1971) the holding was that a claimant may establish a *prima facie* case of disability by the presentation of a treating physician's testimony and that such a case is not overcome by a medical expert who is not prepared to commit his professional opinion as to whether the claimant is capable of working. Likewise, in *Giddings v. Richardson,* 480 F.2d 652 (1973) cited in *Allen,* the holding was that inconclusive medical discussions of the claimant's problems were insufficient to overcome the *prima facie* case established by the claimant's treating physicians.

These two authorities are a far cry from the *per se* rule adopted in *Allen.* (*Also see* another 6th Cir. case, *Miracle v. Celebrezze,* 351 F.2d 361 (6th Cir.1965), holding that a hearing examiner may not rely on "an isolated remark in a medical report" of a non-treating physician in determining whether a conflict existed with a treating physician's testimony).

In evaluating a *per se* rule we must start with the proposition that all witnesses, be they expert or not, based upon their oath will tell the truth, or at least the truth as they see it. Consideration of whether the "truth as they see it" is convincing because of sympathy generated over a long relationship (with or without satisfactory recovery) or because of a desire to have bills paid or a desire for continued employment as experts or a myriad of other "swaying" considerations is best left to the sound judgment of the trier of fact. Any other rule demeans not only the administrative law judge, but also the medical profession.

We therefore adhere to the long standing rule in Arizona concerning the weight to be given expert testimony and refuse to adopt the 6th Circuit *per se* rule.

The claimant next contends that Dr. Eddy's testimony was equivocal and therefore incompetent to create a conflict. The allegedly equivocal testimony is as follows:

Q: You are aware that Dr. Toll reached an impairment of the left leg of 40 per cent and that the group consult reached an impairment of 20 per cent?

A: Yes.

Q: Do you have any way of rectifying those figures?

A: Well, I think that any examination is—The patient may not show the same findings in their examinations. They all have their good and their bad days. However, I could easily, I think, justify an examination which might show up to 20 per cent disability, but it would be hard for me to conceive that this ankle ever being worse than that, I mean, from day to day.

\*   \*   \*   \*   \*   \*

Q: You indicated that you would not be surprised if another day his disability might be 20 per cent, is that right?

A: My findings would warrant giving that evaluation, yes.

Q: Would that be because the condition of the leg may be worse on one day than it is on another day?

A: Yes.

■ Although equivocal testimony is incompetent to create a conflict, see, e.g., *Marquez v. Industrial Commission*, 18 Ariz. App. 16, 499 P.2d 747 (1972), we disagree that Dr. Eddy equivocated. His testimony was firm about what he observed when he examined the petitioner and what impairment rating these observations warranted. His testimony that the petitioner's condition possibly could vary and that an impairment rating in the range of 20% was conceivable did not contradict his own firm findings and rating. In short, Dr. Eddy's concession affected the weight of his testimony, not its competence.

This brings us to the claimant's last contention that the Administrative Law Judge unreasonably resolved the conflicting medical evidence. The respondents answer by citing the well established principle that it is the Commission's prerogative to resolve conflicting medical opinions and this Court will not substitute its judgment for the Commission's. *See, e.g., Stephens v. Industrial Commission*, 114 Ariz. 92, 559 P.2d 212

(App.1977). This principle, however, presupposes that the Administrative Law Judge accurately evaluated the conflicting opinions.[1] In *State Compensation Fund v. Industrial Commission*, 24 Ariz.App. 31, 535 P.2d 623 (1975), for example, the Commission's hearing officer ignored certain medical testimony because he considered it too speculative to support an award for compensability. On appeal, this court concluded that the medical testimony was sufficiently certain, and therefore set aside the award to allow the hearing officer to resolve the conflicting medical opinions.

■ In the present case, the Administrative Law Judge made an analogous error. Apparently the Administrative Law Judge was of the opinion that if he could not accept the totality of a doctor's opinion he was precluded from considering that opinion at all. We find nothing in the rules of evidence or practical experience which requires such a blanket exclusion. Both Dr. Toll and the consultants made similar objective findings and rated this measurable loss of motion at 20%. Yet because the consultants failed to consider the petitioner's subjective complaints of pain in making their rating, the Administrative Law Judge totally disregarded their rating. Consequently, he was left with the extremes of Dr. Toll's 40% impairment rating and Dr. Eddy's 10% impairment rating.

The Administrative Law Judge should have considered the consultants' opinion. The evidence concerning the petitioner's objectively ratable impairment was severable from the evidence concerning his subjectively ratable impairment. Concerning the objectively ratable impairment, Dr. Toll and the consultants' rating of 20% permanent impairment conflicted with Dr. Eddy's rating of 7% permanent impairment.

However, the Administrative Law Judge did not consider the consultants' opinion in

---

1. By "accurately evaluate" we do not refer to assessing the weight of the conflicting medical opinions. This assessment is the Administrative Law Judge's function. Rather, we refer to assessing the conflict of opinion itself.

evaluating the conflict on objective impairment, a weighing factor to which the claimant was entitled, in determining whose opinion the Administrative Law Judge would accept. Because the Administrative Law Judge erroneously disregarded the consultants' opinion, he failed to accurately evaluate the conflict.

Because, as we concluded above, the Administrative Law Judge erroneously disregarded the consultants' opinion concerning the petitioner's objectively ratable impairment and therefore misevaluated the conflicting medical opinions, we must set aside the award. *See* A.R.S. § 23–951(D).

Award set aside.

BROOKS and CONTRERAS, JJ., concur.