19 P.3d 1248

**ROSARITA MEXICAN FOODS,**
**Petitioner Employer,**

**Gallagher Bassett Services, Inc.,**
**Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION**
**OF ARIZONA, Respondent,**

**Francisco Tapia, Respondent Employee.**

No. 1 CA–IC 00–0030.

Court of Appeals of Arizona,
Division 1, Department A.

March 27, 2001.

As Amended April 9, 2001.

Fennemore Craig, P.C. by Scott M. Finical and Tracy A. Ager, Phoenix, Attorneys for Petitioner Employer and Carrier.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Taylor & Associates, P.L.L.C. by Donald F. Schaar, Phoenix, Attorneys for Respondent Employee.

## OPINION

TIMMER, Judge.

¶ 1 We must decide in this special action whether the administrative law judge ("ALJ") erred by continuing benefits to claimant Francisco Tapia and awarding him further diagnostic testing without proof that his condition was medically non-stationary. For the reasons that follow, we hold that the ALJ did not err in awarding diagnostic testing but incorrectly continued other benefits to Tapia. We therefore set aside the award.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Tapia, a cook employed by Rosarita Mexican Foods, injured his back at work while lifting boxes of vegetables in June, 1998. Initially, Tapia only experienced lower back pain. But one month later, while driving a forklift at work, Tapia felt an increase in back pain that ultimately extended to his groin, buttocks, and down one leg. Later that evening, Tapia went to the emergency room of a local hospital where he was diagnosed with lumbar strain. Tapia subsequently received physical therapy and other medical treatment.

¶ 3 An MRI scan of Tapia's lumbar spine was performed on July 30, 1998, and revealed that he had suffered a herniated disc with an extruded fragment. After reviewing the MRI scan results, Tapia's physician referred him to a neurosurgeon for consultation. Pursuant to the neurosurgeon's recommendations, Tapia underwent a series of epidural steroid injections.

¶ 4 Tapia filed a workers' compensation claim, which was accepted by Rosarita and its carrier (collectively "Rosarita") in July, 1998. Rosarita then referred Tapia to Dr. Kevin Ladin, a board-certified specialist in physical medicine rehabilitation, for an independent medical examination. After examining Tapia in December, Dr. Ladin concluded that Tapia had sustained a disc herniation as a consequence of the industrial injury suffered in June. He further opined that Tapia's injury was not medically stationary. Dr. Ladin then recommended a course of treatment, which he ultimately oversaw.

¶ 5 In March, 1999, Dr. Ladin determined that Tapia's injury was medically stationary without permanent impairment. Accordingly, he released Tapia to full-duty work status without restrictions and recommended follow-up supportive care on an as-needed basis. Rosarita then issued Tapia a Notice of Claim Status closing his claim without permanent impairment, and Tapia filed a timely protest under Arizona Revised Statutes Annotated ("A.R.S.") section 23–941 (1995).

¶ 6 Dissatisfied with Dr. Ladin's diagnosis and recommendation, Tapia consulted Dr. Jack K. Mayfield, a board-certified orthopedic surgeon limited to spinal disorders, who examined Tapia in April, 1999. A second MRI scan was conducted in June, 1999, but it did not reveal a disc herniation or extruded fragment.

¶ 7 During the subsequent Industrial Commission hearing, Tapia testified that he was still experiencing low-back pain that radiated down his buttocks and into his groin, which he perceived was worsening. Dr. Mayfield then testified that Tapia's course of treatment had not resolved his problem. Based upon his review of both MRI scan reports and his examination of Tapia, Dr. Mayfield expressed skepticism that the extruded disc fragment present in the first MRI scan had

simply disappeared by the time of the second scan. Consequently, he recommended that Tapia undergo the more definitive myelogram CT scan in order to resolve the conflict in the "diametrically opposed MRIs." Although he tentatively diagnosed Tapia as having lumbar disc disease, attributable to the industrial injury, Dr. Mayfield testified that he could not assess the condition as stationary or non-stationary, or determine its permanency, without the benefit of the myelogram CT scan.

¶ 8 Rosarita offered the testimony of Dr. Ladin, who also attributed Tapia's back pain to the industrial injury. But Dr. Ladin opined that Tapia's condition was stationary with no permanent impairment and that it was unnecessary to conduct a myelogram CT scan to make this diagnosis. According to Dr. Ladin, the extruded fragment seen on the first MRI scan may actually have been soft tissue of another type or the result of "arching," which is an illusion sometimes present in scans. He further testified that even if the first MRI scan accurately identified an extruded fragment, Tapia's body could have reabsorbed it. Finally, Dr. Ladin said that the second MRI scan was consistent with his diagnosis and "very probabl[y]" reflected Tapia's true medical condition.

¶ 9 At the conclusion of the hearing, the ALJ found a conflict in the medical evidence regarding Tapia's need for further active care relating to his industrial injury. She then concluded that Dr. Mayfield's opinions were "more probably correct and well founded that [Tapia] ... requires further active care related to the industrial injury." Consequently, the ALJ awarded Tapia (1) continuing benefits until his injury is stationary, (2) temporary disability compensation benefits until his injury is stationary, and (3) a myelogram CT scan. Rosarita subsequently requested review of the award, and the ALJ affirmed it. Rosarita timely sought our re-

view of the award, and we have jurisdiction to consider it pursuant to A.R.S. sections 12–120.21(A)(2) (1992) and 23–951 (1995).

## STANDARD OF REVIEW

■ ¶ 10 We review *de novo* the ALJ's determination that Dr. Mayfield's testimony created a legally sufficient medical conflict in the evidence regarding the status of Tapia's condition. *See Yauch v. S. Pac. Transp. Co.,* 198 Ariz. 394, 399, ¶ 10, 10 P.3d 1181, 1186 (App.2000) (questions of alleged legal error reviewed *de novo* ). If Dr. Mayfield's testimony sufficiently established a conflict in the medical evidence, we will not disturb the ALJ's resolution of this conflict unless it is "wholly unreasonable." *Stainless Specialty Mfg. Co. v. Indus. Comm'n,* 144 Ariz. 12, 19–20, 695 P.2d 261, 268–69 (1985).

## DISCUSSION

I. **Sufficiency of Dr. Mayfield's Testimony to Create a Medical Conflict in the Evidence that Tapia's Injury was Stationary.**

■ ¶ 11 Rosarita initially argues that the ALJ erred by implicitly finding [1] that Tapia's injury was non-stationary because (1) Dr. Mayfield's testimony on the issue was "equivocal" and therefore incompetent to support the finding, and (2) Dr. Ladin opined that Tapia's injury was stationary. Although we disagree that Dr. Mayfield's testimony was equivocal, we agree that it was legally insufficient to support a finding that Tapia's condition was non-stationary.

■ ¶ 12 Because the condition of Tapia's back injury was a matter peculiarly within the knowledge of medical doctors, the ALJ was entitled to conclude that Tapia's injury was non-stationary only if competent medical testimony supported that determina-

---

1. Although the ALJ did not explicitly find that Tapia's condition is non-stationary, she did so implicitly by finding that he "requires further active care," *see Johnson–Manley Lumber v. Indus. Comm'n,* 159 Ariz. 10, 13, 764 P.2d 745, 748 (App.1988) (need for active medical treatment aimed at improving condition establishes claimant's condition as non-stationary), and by awarding benefits until his condition is determined to be medically stationary.

tion. *Stephens v. Indus. Comm'n*, 114 Ariz. 92, 95–96, 559 P.2d 212, 215–16 (App.1977). Tapia's injury was stationary if "'nothing further in the way of medical treatment [was] indicated to improve [his] condition.'" *Tsosie v. Indus. Comm'n*, 183 Ariz. 539, 540, 905 P.2d 548, 549 (App.1995) (quoting *Home Ins. Co. v. Indus. Comm'n*, 23 Ariz.App. 90, 94, 530 P.2d 1123, 1127 (1975)).

■ ¶ 13 "Equivocal" medical testimony cannot support a finding that a claimant's condition is non-stationary. *Walters v. Indus. Comm'n*, 134 Ariz. 597, 600, 658 P.2d 250, 253 (1982). Testimony is "equivocal" if it is subject to two or more interpretations or if the expert avoided committing to a particular opinion. *Harbor Ins. Co. v. Indus. Comm'n*, 25 Ariz.App. 610, 612, 545 P.2d 458, 460 (1976).

¶ 14 Tapia argues that Dr. Mayfield's testimony was unequivocal because he steadfastly maintained that a myelogram CT scan must be conducted before determining whether additional medical treatment would improve Tapia's condition. But Tapia's assertion is not responsive to Rosarita's contention and is therefore unpersuasive. The issue is whether Dr. Mayfield unequivocally testified that Tapia's condition was medically non-stationary, not whether he unequivocally testified that additional testing was necessary.

¶ 15 We have read Dr. Mayfield's testimony and do not glean any support for the ALJ's conclusion that Tapia's injury is non-stationary. Significantly, Dr. Mayfield testified as follows:

Q. Okay. Do you think his condition is medically stationary—his industrial condition?

A. Well, I haven't seen him since April, so I—

Q. Well, based upon the data that you had at that point in time and now the new MRI that you have, do you think there's anything more that can be done for him medically to make him better?

A. I can't answer that.

Q. Okay. What would be the purpose of doing the CT myelogram?

A. Well, you know, for me to make a statement that nothing more can be done for him, I have to—I have to know more exactly that there's no pathology, and at this point, I have two diametrically opposed MRIs—not saying it can't change, but—that significantly, but I have to know for sure that it's not an impressive finding before I can make a decision there's nothing—no more can be done for him, and also examine him again and see what his symptoms are.

. . .

Q. Okay.

A. And I can't make any statement about his—his stationary status, whether he needs any treatment, whether he has any pathology presently, whether his symptoms are minimal, or whether he has—what he needs in the future.

¶ 16 The above-quoted testimony reflects that Dr. Mayfield did not "equivocate" in his testimony; he decisively stated that he could not opine on the status of Tapia's condition without the benefit of a myelogram CT scan and further physical examination. Consequently, this testimony is insufficient to establish that Tapia's injury is non-stationary, and the ALJ erred in her finding.

¶ 17 But our review is not ended. The ALJ necessarily based the award on her resolution of the conflict in the medical testimony regarding the need for a myelogram CT scan before a determination could be made about the status of Tapia's condition. Thus, we must decide whether the ALJ could appropriately award Tapia the myelogram CT scan and continue other benefits without competent medical evidence that his condition was non-stationary. If so, we may affirm even though the ALJ entered an erroneous finding. *See Special Fund Div./No Ins. Section v. Indus. Comm'n*, 181 Ariz. 387, 393, 891 P.2d 854, 860 (App.1994) (affirming award ALJ entered for the wrong reason).

## II. Sufficiency of the Medical Testimony to Support the Award without Proof that Tapia's Condition was ·Medically Non Stationary.

¶ 18 Tapia argues that the ALJ was entitled to enter the award based solely on Dr. Mayfield's testimony regarding the necessity of the myelogram CT scan because diagnostic testing is a "medical benefit" under our workers' compensation laws, which can be awarded to assist the ALJ in her search for the truth about Tapia's injury before deciding whether his condition is stationary. Rosarita does not contest that diagnostic testing can be a medical benefit, and we agree.

■■■ ¶ 19 Our laws provide that upon notice to the employer, every employee injured during the course of employment "shall receive medical, surgical and hospital benefits or other treatment ... reasonably required at the time of the injury, and during the period of disability." A.R.S. § 23–1062(A) (1995). Although the legislature did not define "medical benefits," diagnostic services necessary to determine the cause and extent of a compensable injury must be deemed such a benefit in order to ensure adequate treatment. *See* A.R.S. § 1–211(B) (1995) ("Statutes shall be liberally construed to effect their objects and to promote justice."); *see also City of Phoenix v. Superior Court*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984) (court should interpret statute so as to give it a fair and sensible meaning). Because diagnostic testing is a "medical benefit" under our workers' compensation laws, the ALJ can properly resolve any disputes about the need for such testing and enter appropriate awards. *See Sandoval v. Salt River Project*, 117 Ariz. 209, 214, 571 P.2d 706, 711 (App. 1977) (commission properly resolves all controversies arising out of the processing of injured workers' claims for benefits); *see also Patton v. Indus. Comm'n*, 12 Ariz.App. 43, 44, 467 P.2d 755, 756 (1970) (finding a conflict in the medical evidence about whether a lumbar myelogram was necessary to diagnose claimant's then-existing physical condition, but affirming denial of payment for the test because claimant failed to prove that scan might reasonably establish industrially-related condition).

¶ 20 The more difficult issue before us is whether the ALJ could properly (1) award the myelogram CT scan and (2) reinstate and continue other benefits to Tapia absent proof that his condition was non-stationary. *Cf. Western Cable v. Indus. Comm'n*, 144 Ariz. 514, 518, 698 P.2d 759, 763 (App.1985) (determination that industrial injury is not yet stationary is prerequisite for temporary disability). We assess each element of the award in turn.

### 1. Myelogram CT Scan

■■ ¶ 21 Rosarita argues that the ALJ effectively deferred deciding the status of Tapia's claim by awarding the scan and therefore improperly impeded a "speedy, fair, and final administrative adjudication" of the claim by indefinitely extending the fact-finding process. Tapia counters that the ALJ was duty-bound to "search for the truth," *Beiner v. Indus. Comm'n*, 20 Ariz. App. 408, 410, 513 P.2d 946, 948 (1973), and was therefore entitled to award the myelogram CT scan before determining the status of his condition. We agree with Tapia.

¶ 22 The ALJ was entitled on her own motion to order the myelogram CT scan and continue the hearing pending the outcome of the test and subsequent examination by Dr. Mayfield. *See* A.A.C. R20–5–156 (Supp.95–1) ("Rule 56").[2] Rule 56 permits an ALJ to

2. Although neither party cited Rule 56 in its briefs, we deem it instructive. The rule provides, in pertinent part, as follows:
    A. The granting of a continuance of a hearing shall be discretionary with the administrative law judge.
    B. If at the conclusion of a hearing held by a hearing officer, any interested party desires a further hearing for the purpose of introducing further evidence, the party shall state specifically and in detail the nature and substance of the evidence desired to be produced, the names and addresses of the witnesses and the reason why the party was unable to produce such evidence and such witnesses at the time of the hearing. If it appears to the presiding

"continue a hearing and order such further examinations or investigations, as in his discretion, appear warranted" without first determining the ultimate validity of a claim. This procedure works "substantial justice" by enabling the ALJ to fully consider all pertinent facts of a case before rendering a final award. *Wood v. Indus. Comm'n*, 126 Ariz. 259, 261–62, 614 P.2d 340, 342–43 (App. 1980).

¶ 23 In effect, the ALJ achieved the outcome permitted by Rule 56 by awarding the scan if she indeed deferred deciding the status of Tapia's condition.[3] Although Rule 56 does not specifically provide that the ALJ can order investigative or diagnostic testing at the employer or carrier's expense, as contemplated under the ALJ's award in this case, we decide that an ALJ has the discretion to craft such an order.

■ ¶ 24 The workers' compensation laws are designed to benefit the injured employee rather than the employer. *Dugan v. American Express Travel Related Serv. Co.*, 185 Ariz. 93, 99, 912 P.2d 1322, 1328 (App.1995). This objective is best served by granting the ALJ discretion to order reasonable and needed investigative and diagnostic tests at the expense of the employer or its carrier if the tests are causally related to the employee's injury. Moreover, we are mindful that even if the ALJ had issued an award closing the claim, Tapia would have been entitled to undergo the myelogram CT scan at Rosarita's expense. *See* A.R.S. § 23–1061(H) (Supp.2000) ("A claim shall not be reopened solely for additional diagnostic or investigative medical test, but expenses for any reasonable and necessary diagnostic or investi-

gative tests that are causally related to the injury shall be paid by the employer or the employer's insurance carrier."). If the scan demonstrated that Tapia's condition was non-stationary, he could then have reopened his claim and secured benefits. *Id.* We do not discern any reason to require Tapia to obtain his scan after an adverse award and possibly petition to reopen his claim rather than allowing him to undergo the scan at Rosarita's expense before the ALJ determines the status of his condition. Thus, we hold that the ALJ did not err by awarding the myelogram CT scan without proof that Tapia's condition is medically stationary.

*2. Non–Diagnostic and Non–Investigative Medical Benefits*

■ ¶ 25 Rosarita next argues that because Tapia protested the Notice of Claim Status terminating benefits, he was obligated to prove that his condition was non-stationary by presenting supportive medical evidence prior to the conclusion of the hearing. Because Tapia failed to do so, Rosarita argues, the ALJ erred in continuing benefits. We agree that the ALJ erred by continuing[4] non-diagnostic and non-investigatory benefits.

■ ¶ 26 Tapia placed the status of his condition at issue by submitting a Request for Hearing, which challenged the closure of his claim and contended that he was "entitled to temporary compensation and active medical treatment" beyond the closure date. *See Stephens*, 114 Ariz. at 94, 559 P.2d at 214 (claimant's expressed desire in Request for Hearing to prove a permanent disability placed the issue before the Commission).

administrative law judge that, with the exercise of due diligence, such evidence or witness could have been produced, or that such evidence or testimony should be cumulative, immaterial or unnecessary, he may deny the request for a continued hearing. *He may, on his own motion, continue a hearing and order such further examinations or investigations as, in his discretion, appear warranted.*
A.A.C. R20–5–156 (Emphasis added.)

**3.** Rosarita concedes that "there is little doubt that the award of the CT myelogram is aimed at

developing new evidence regarding [Tapia's] stationary status."

**4.** The ALJ's "continuation" of benefits is somewhat of a misnomer as it implies that benefits have been ongoing since Rosarita issued its Notice of Claim Status. In fact, Tapia's benefits terminated upon issuance of the notice. A.R.S. § 23–1061(M). Thus, by "continuing" Tapia's benefits, the ALJ actually reinstated them retroactive to the date of the termination notice.

Thus, he bore the burden of proving at the hearing that his condition was non-stationary in order to receive a continuation of non-diagnostic and non-investigatory benefits. *Id.* As set forth previously, *see* ¶¶ 11–16 *supra,* Tapia did not sustain this burden. Although the ALJ was entitled to order the myelogram CT scan at Rosarita's expense before deciding the status of Tapia's condition, she erred by continuing non-diagnostic benefits to Tapia absent sufficient evidence that his condition was medically non-stationary. 114 Ariz. at 96, 559 P.2d at 216. For this reason, we must set aside the award.

## CONCLUSION

¶ 27 For the foregoing reasons, we hold that the ALJ did not err by awarding the myelogram CT scan at Rosarita's expense. However, the ALJ erred by finding that Tapia's condition was medically non-stationary and by awarding non-diagnostic and non-investigatory benefits to him. We therefore set aside the award.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and SUSAN A. EHRLICH, Judge.