NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DAVID SMITH, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

TURF PARADISE, *Respondent Employer*,

AMERICAN LIBERTY INSURANCE CO, *Respondent Carrier*.

No. 1 CA-IC 23-0008
FILED 05-23-2024

---

Special Action - Industrial Commission
ICA Claim No. 20200740001
Carrier Claim No. 7058370
The Honorable Colleen Marmor, Administrative Law Judge

**AFFIRMED**

---

COUNSEL

David Smith, Coeur d'Alene, ID
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix, AZ
By Afshan Peimani
*Counsel for Respondent*

Jardine Baker Hickman & Houston PLLC, Phoenix
By K. Casey Kurth
*Counsel for Respondent Employer and Insurance Carrier*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Michael S. Catlett joined.

---

**M O R S E**, Judge:

¶1        David Smith challenges an Industrial Commission of Arizona ("ICA") award in favor of Turf Paradise and its insurer American Liberty Insurance Company (collectively, "Turf Paradise"). Smith contends the administrative law judge ("ALJ") erred in adopting an independent medical examiner's opinion that his injury sustained at Turf Paradise was medically stable and needs no further treatment. For the following reasons we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Smith is a disabled veteran who worked part-time for Turf Paradise when he was injured on March 7, 2020. His disability from his military service includes bilateral cubital tunnel syndrome, a condition of the ulnar nerve, which is located at the elbow, that he developed from lifting heavy ordnance. Smith described it as both arms being "10 percent paralyzed." Smith's work injury occurred when an angry customer "took a swing" at Smith with a closed fist, hitting him on the inside of his right arm at the elbow and causing immediate pain. Smith immediately went to the emergency room ("ER"), where they took an x-ray, gave him an ice pack, and referred him to Dr. Scott Frankel, an orthopedic doctor in Phoenix, Arizona. Dr. Frankel prescribed physical-therapy sessions and an arm brace. Smith participated in "eight or nine" physical-therapy sessions, which provided relief from the pain.

¶3        On March 14, Smith submitted his claim for workers' compensation to the ICA. In April, the ICA accepted it as a "medical only" claim. In August 2020, Smith moved to Idaho, but he did not notify the insurance company that he moved. In September 2020, the ICA mailed Smith a "20-day" letter informing him that it would "assume" he had fully recovered from his injury if Smith failed to respond to the letter in 20 days. The letter noted that the case would be closed because he had not seen a doctor regarding his injury since July. Smith did not receive the 20-day letter until October. He challenged the closure notice, and the case was set for a hearing.

¶4        Smith testified at the hearing that his arm "went to sleep at night" before the work injury, but after the injury, it falls asleep every night and is worse.  He testified that his elbow symptoms worsened after the work injury.  He also testified that the injury caused a deformity in his right elbow.  At Turf Paradise's counsel's request, Smith showed the injured area to the ALJ during the hearing.  Later in the hearing, both medical experts testified that they could not detect the deformity.

¶5        Spencer Greendyke, M.D. is a board-certified orthopedic surgeon who performed an independent medical examination ("IME") at Smith's request.  He testified that Smith told him he was hit on the medial side (inside of the arm, closest to the body) of his right elbow and that the lateral side (outside) of his elbow may have hit the side of his ticket booth.  He confirmed Smith's prior condition of bilateral cubital tunnel syndrome.  He examined Smith and found lateral epicondylitis in the right elbow.  He also compared MRI results of the right elbow taken in 2017 that showed no evidence of epicondylitis or tearing with one taken in 2021 that showed partial tearing to the extensor origin, which he called a new condition.  He testified that the new condition was likely related to the work injury, even though the ER documentation did not note any bruising or contusions on the lateral side.  He based his opinion on Smith's denial of lateral pain before the work injury and the existence of lateral pain after.  He found that denial to be consistent with the diagnostic imaging.  He concluded with a "reasonable degree of medical probability there is a relationship between [Smith's] present elbow complaints and the industrial injury."  He attributed any late onset of symptoms on the lateral side of the elbow to a delay in a localized manifestation of pain.

¶6        Peter Campbell, M.D. is an orthopedic surgeon with added qualifications in hand and upper extremity reconstruction.  He performed an IME at the request of Turf Paradise.  He confirmed Smith's pre-existing bilateral-ulnar-nerve problems.  He testified that Smith's complaint of pain in the lateral part of the elbow is inconsistent with the work injury.  He acknowledged the presence of lateral epicondylitis but found it unrelated to the work injury.  He agreed with Dr. Greendyke's diagnosis of epicondylitis but described it as more specifically epicondylosis because Smith's condition was degenerative and did not involve inflamed cells.  He said that the condition is popularly known as "tennis elbow," and is a common "degenerative tendon change" that affects "up to 3 percent of the general population without any form of trauma," and is sometimes associated with repetitive heavy lifting and gripping.  He opined with a reasonable degree of medical probability that being hit on the inside of the elbow would not cause tendinosis on the lateral side of the elbow.  He

disagreed with Dr. Greendyke's opinion that the lateral elbow condition is related to the work injury because being hit on the inside of the elbow, by itself, would not cause a lateral elbow injury. Dr. Campbell also disagreed with Dr. Greendyke's opinion in his IME that Smith did not "realize and maybe he [was] struck [on] the lateral side of his elbow." He concluded that the injury was stationary and no permanent impairment was attributable to the work injury.

¶7            The ICA issued a decision in April 2022. In a section entitled "Findings," the award summarized the factual basis of the claim, the testimony, and other evidence adduced at the hearing. After identifying and discussing Dr. Greendyke's and Dr. Campbell's conflicting testimony, the decision found that "the opinions and conclusions as outlined by Dr. Campbell are adopted herein as being most probably correct and well-founded," and concluded that Smith's "condition was medically stationary as of July 8, 2020." In a follow-up Decision Upon Review, the ALJ corrected a few factual and typographical errors but affirmed the conclusion of the award. This special action appeal followed.

**DISCUSSION**

¶8            The burden of proof is on the injured worker to show "that his condition has not become stationary and that he is entitled to continu[ed] benefits." *Stephens v. Indus. Comm'n*, 114 Ariz. 92, 94 (App. 1977). "[T]he term 'stationary' refers to that time when the physical condition of the employee resulting from the industrial injury has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition." *Aragon v. Indus. Comm'n*, 14 Ariz. App. 175, 176 (1971). When an issue is "peculiarly within the knowledge of medical doctors," such as whether a medical condition is stationary, competent medical testimony must support a worker's claim that the condition is not static. *Rosarita Mexican Foods v. Indus. Comm'n*, 199 Ariz. 532, 535, ¶ 12 (App. 2001).

¶9            Smith argues that the ALJ relied on the "bias[ed], false, misleading testimony of Dr. Cambell [sic]" and urges us to apply "common sense and logic free from bias" to the case. We do not re-weigh the evidence considered by the ALJ. *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 608, ¶ 21 (App. 2000). The ALJ should make findings "on all the case's material issues," but the "lack of findings on a particular issue does not invalidate an award per se." *Post v. Indus. Comm'n*, 160 Ariz. 4, 7 (1989). But if the appellate court must take on the role of "factfinder" or "speculate" about the factual basis for the award, the award must be vacated. *Id.*

**¶10**         When there is conflicting evidence or different inferences that could be drawn from the evidence, the ICA's findings will be affirmed unless they are "wholly unreasonable." *Waller v. Indus. Comm'n*, 99 Ariz. 15, 18 (1965). When resolving competing expert-witness testimony, the ALJ may consider the "diagnostic method used, qualifications in backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred." *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988). Further, an ALJ is not bound to give greater weight to the testimony of a treating physician over that of an IME. *Walters v. Indus. Comm'n*, 134 Ariz. 597, 599 (App. 1982).

**¶11**         The ALJ in *Post* had to resolve conflicting expert opinions about whether the claimant's injury had become stable. 160 Ariz. at 5. After only "quoting some testimony and citing general principles of workers' compensation law," the ALJ concluded reopening the claimant's case was unnecessary. *Id.* Our supreme court ultimately set aside the award because the ALJ provided no "resolution of conflicting testimony, no findings of ultimate fact, and no conclusions on the legal issues." *Id.* at 8.

**¶12**         In contrast, the ALJ here heard competing testimony from Dr. Greendyke and Dr. Campbell and also considered the IME reports, "medical records[,] and other documents" from the record. The ALJ entered a seven-page award, extensively outlining the facts of the case, both doctors' testimony, and the legal standard. Then the ALJ "adopted" Dr. Campbell's opinions and conclusions as "being most probably correct," and concluded Smith's injury "was medically stationary as of July 8, 2020." Thus, the ALJ resolved the conflicting testimony regarding Smith's injury and decided the ultimate issue in the case. The ALJ's findings were more than sufficient. *See Post*, 160 Ariz. at 8 (noting that an ALJs' findings should "explicitly state their resolution of conflicting evidence on material and important issues, find the ultimate facts, and set forth their application of law to those facts," but the findings need "not require any particular form, nor even great detail"); *Douglas Auto & Equip. v. Indus. Comm'n*, 202 Ariz. 345, 347, ¶ 9 (2002) (noting that findings of fact "need not be exhaustive," but must be "sufficiently comprehensive and explicit for a reviewing court to glean the basis for the judge's conclusions"); *CAVCO Indus. v. Indus. Comm'n*, 129 Ariz. 429, 435 (1981) (noting that specific findings on "how the ultimate finding [is] reached" are unnecessary when "it can be determined from an examination of the record").

**¶13**         Smith insists that the ALJ should not have accepted Dr. Campbell's testimony. But the ALJ has discretion to choose the medical opinion that best accounts for the evidence presented. *See Walters*, 134 Ariz.

at 599. Smith has not shown that the ALJ was wholly unreasonable in reaching her decision, nor does a review of the decision show the ALJ made inadequate findings.

## CONCLUSION

¶14 The award is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV