NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SANDOR TORGYIK, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

BELL FORD INC, *Respondent Employer*,

TRANS CITY CASUALTY INSURANCE CO, *Respondent Carrier*.

No. 1 CA-IC 25-0016

FILED 03-02-2026

Special Action - Industrial Commission
ICA Claim No. 20232980501
Carrier Claim No. TL23015
The Honorable Jeanne Steiner, Administrative Law Judge

**AFFIRMED**

COUNSEL

Sandor Torgyik, Glendale
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Lundmark Barberich La Mont & Puig PC, Phoenix
By Javier Arturo Puig and David T. Lundmark
*Counsel for Respondent Employer and Insurance Carrier*

_____

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

_____

**J A C O B S**, Judge:

**¶1**     Sandor Torgyik challenges an Industrial Commission of Arizona ("ICA") award, claiming it incorrectly found his industrial injury medically stationary and incorrectly closed his claim without finding permanent impairment.  Because evidence in the record supports the ICA decision, we affirm.

## FACTS AND HISTORY

### A.     Torgyik Hurt Himself at Work, Filed a Workers' Compensation Claim, and Sought Treatment.

**¶2**     Torgyik is in his seventies and has had both knees replaced, so he no longer works as an auto body technician.  When he was injured in late September 2023, Torgyik worked as a car cleaner and detailer in Respondent Bell Ford's auto repair shop.  After taking an elevated, "monster"-type, truck with oversized tires through a car wash and cleaning its interior, he exited the truck by sliding off the side of the driver's seat and dropping to the ground, landing on his feet and feeling pain in his knees.  He estimated the seat was five feet above ground and that his feet dropped two to three feet to the ground.  He continued working that day and for the next several weeks before seeking medical help for knee pain.

**¶3**     Torgyik filed a workers' compensation claim about three weeks later, saying he injured both knees when he dropped to the ground out of the truck.  His claim was accepted.

**¶4**     Torgyik first saw orthopedist Earl Feng, M.D., who had replaced both of Torgyik's knees in separate surgeries five and six years earlier.  On his first visit in October 2023, Torgyik complained about knee pain caused by the truck incident.  Three weeks later, he returned to Dr. Feng complaining about numbness and tingling in his left leg, which Dr. Feng attributed to a possible pinched nerve in his back.  Dr. Feng referred Torgyik to a back specialist.  Four days later, Torgyik was seen in an emergency room for knee pain, which he attributed to the work incident

and said was getting worse. X-rays showed no acute injury to his knees. He was discharged.

¶5          A month later he was back at Dr. Feng's complaining of continued knee pain. MRIs of his knees showed no acute trauma. Dr. Feng concluded the knees were "not likely the source of his continued symptomology" and referred Torgyik to a pain management or neurology specialist.

¶6          In February 2024, Torgyik saw another orthopedist for his knee pain. The orthopedist took x-rays, finding nothing abnormal and no acute injury but recommending a bone scan. A month later, he saw orthopedic surgeon Perry Evangelista, M.D., for bilateral hip pain. Based on a March 2024 bone scan, Dr. Evangelista diagnosed severe osteoarthritis in both hips and recommended hip replacement surgery, which he performed in July 2024.

¶7          In January 2024, orthopedic surgeon Neal Rockowitz, M.D. conducted an independent medical examination ("IME") of Torgyik at the request of Respondent carrier Trans City Casualty Insurance Co. He reviewed medical records and physically examined Torgyik, concluding the claimed injury was not "a work injury of significance." He declared Torgyik medically stationary and without impairment. Based on the IME, Respondents issued a notice closing Torgyik's claim. Torgyik protested and the ICA held a hearing.

### B.     Doctors Present Conflicting Views of Whether Torgyik's Injury Was Work-Derived and Whether It Was Stationary at an Industrial Commission Hearing.

¶8          At the hearing, Torgyik testified about the workplace incident, stating he hurt both his knees and his hips. He further testified that he told Dr. Feng that he had hip pain and that Dr. Feng told him his knee pain could be from his hips radiating down to his knees. However, he also testified Dr. Evangelista was the first doctor to tell him his problem could be with his hips and that Dr. Feng did not examine his hips. He insisted on cross-examination that he told several doctors about hip pain even though there is no documentation of that in the medical records.

¶9          Dr. Evangelista testified about Torgyik's hip condition and the need for hip replacements. He stated that he began treating Torgyik in February 2024 and explained that in many patients with complaints of knee pain the cause is actually in the hips. An X-ray of Torgyik's hips showed severe osteoarthritis, a chronic condition, for which surgery was eventually

necessary. He testified he believed Torgyik injured his hips when he dropped out of the truck, stating Torgyik "probably had an acute exacerbation of labral pathology but also certainly an acute exacerbation of the underlying hip arthritis . . . ." He concluded that the need for bilateral hip replacements related to the workplace injury.

¶10 Dr. Rockowitz also testified. His January 2024 IME found no evidence of a significant knee injury from the truck incident. He also testified that Torgyik's knee pain complaints did not "fit the pattern that we typically see when we have hip [abnormality] with referred pain to the knee." In an addendum authored after reviewing the hip X-rays taken after his IME, he agreed Torgyik had "at least [a] moderate level [of] osteoarthritis" in his hips. But he noted there were no signs of acute trauma that would indicate an exacerbation of osteoarthritis.

¶11 A third medical expert testified at the hearing. Sherwood Duhon, M.D. is an orthopedic surgeon who performed an IME of Torgyik in April 2024. After reviewing records and examining Torgyik, he found "no objective evidence of a permanent aggravation" of the hips. Dr. Duhon explained he would have expected groin pain to manifest sooner than four or five months later had the truck incident exacerbated the arthritis in Torgyik's hips. He denied Torgyik's hip replacements were needed because of the drop from the truck.

### C. The ALJ Finds Respondents' Medical Experts More Probably Correct Than Torgyik's.

¶12 An ICA Administrative Law Judge (ALJ) considered the testimony and evidence and found Torgyik was not a credible witness and the opinions of Dr. Duhon and Dr. Rockowitz were more probably correct and well-founded than the opinion of Dr. Evangelista.[1] The ALJ affirmed closure of Torgyik's claim.

¶13 Upon administrative review, Torgyik attempted to impeach Dr. Rockowitz by submitting new evidence. The ALJ did not accept the newly submitted evidence, but reconsidered the evidence already in the record. The ALJ affirmed her conclusions that Torgyik's testimony about his condition after the incident was not credible and that "Dr. Evangelist[a]'s opinions are based on [Torgyik]'s subjective complaints and history, which are not reliable . . . ."

---

[1] It also established Torgyik's average monthly wage, which Torgyik does not challenge, and which we do not discuss in this decision.

¶14       Torgyik then brought this special action challenging the closure of his claim.  We have jurisdiction to review the ALJ's decision under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(B), 23-951(A).

## DISCUSSION

### I.       We Decline to Strike Torgyik's Opening Brief or Treat It as Waiving His Contention That the ALJ Should Not Have Relied on Dr. Rockowitz's Medical Opinion.

¶15       Respondents moved to strike Torgyik's opening brief for not complying with ARCAP 13(a)(7) because "it [did] not contain any legal argument or citations to the record."  Respondents likewise argue in their brief in this Court that Torgyik has waived appellate review, contending his opening brief "does not contain any legal argument" and is "totally deficient."

¶16       We disagree on both points.  As to the former, Torgyik argues that the ALJ should not have relied on Dr. Rockowitz's medical opinion because Dr. Rockowitz was biased against him and did not perform an adequate examination.  As to the latter, Torgyik's brief lacks record citations, but the record is short and his statements clearly relate to it.  We thus exercise our discretion to decide Torgyik's appeal on the merits.  *See Lederman v. Phelps Dodge Corp.*, 19 Ariz. App. 107, 108 (1973) (affirming judgment despite deficiencies of brief given judicial preference to resolve matters on their merits).

### II.      We Affirm Because the Record Supports the ALJ's Resolution of Conflicts Within the Medical Opinion Evidence.

¶17       We view the evidence in the light most favorable to sustaining the ICA award.  *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975).  The ALJ has the primary responsibility to resolve conflicts in medical opinion evidence.  *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988).  We defer to the ALJ's resolution of these conflicts and will affirm the ALJ's findings if any reasonable theory of the evidence supports them.  *Perry*, 112 Ariz. at 398–99.

¶18       An injured worker has the burden to show the medical condition caused by their work injury has not become stationary and requires continued active treatment.  *Stephens v. Indus. Comm'n*, 114 Ariz. 92, 94 (App. 1977).  A condition is stationary when it reaches maximum medical improvement because "the physical condition of the employee resulting from the industrial injury has reached a relatively stable status so

that nothing further in the way of medical treatment is indicated to improve that condition." *Aragon v. Indus. Comm'n*, 14 Ariz. App. 175, 176 (1971). When an issue is peculiarly within the knowledge of doctors, such as whether a medical condition is stationary, a worker must provide competent medical testimony that supports their claim that their condition is not stationary. *Rosarita Mexican Foods v. Indus. Comm'n*, 199 Ariz. 532, 535 ¶ 12 (2001).

**¶19** Torgyik contends Dr. Rockowitz's medical opinion should not have been given weight over Dr. Evangelista's. He thus asks us to reweigh the medical evidence and expert testimony, which is not for us to do. *Wal-Mart v. Indus. Comm'n*, 183 Ariz. 145, 147 (App. 1995) (appeals court will not re-weigh the evidence). We affirm the ALJ's resolution of conflicting medical opinions unless there is an abuse of discretion. *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 605 ¶ 10 (App. 2000). There is an abuse of discretion when no reasonable theory of the evidence supports the ICA decision. *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217 (1968). But that's not the case here: Dr. Rockowitz and Dr. Duhon explained the bases of their opinions and evidence in the record supports their explanations.

## CONCLUSION

**¶20** Because we see no abuse of discretion, we affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR